# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

### No. ACM 39708 (f rev)

_____

### UNITED STATES
*Appellee*

**v.**

### Mamadou S. MAR
Airman First Class (E-3), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 29 June 2022

_____

*Military Judge:* Jennifer E. Powell; Andrew R. Norton (remand).

*Sentence:* Sentence adjudged on 25 April 2019 by GCM convened at Nellis Air Force Base, Nevada. Sentence entered by military judge on 19 May 2019 and reentered on 4 January 2021: Bad-conduct discharge, confinement for 12 months, and reduction to E-1.

*For Appellant:* Major Ryan S. Crnkovich, USAF; Major David A. Schiavone, USAF.

*For Appellee:* Lieutenant Colonel Matthew J. Neil, USAF; Major Morgan R. Christie, USAF; Major Anne M. Delmare, USAF; Major Peter F. Kellett, USAF; Major John P. Patera, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, KEY, and MERRIAM, *Appellate Military Judges*.

Judge MERRIAM delivered the opinion of the court, in which Chief Judge JOHNSON and Senior Judge KEY joined.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

MERRIAM, Judge:

A general court-martial composed of a military judge alone found Appellant guilty, in accordance with his pleas and a pretrial agreement (PTA),[1] of one specification of dereliction of duty, two specifications of wrongful use of marijuana, two specifications of wrongful use of cocaine, one specification of wrongful use of psilocybin mushrooms, one specification of wrongful use of 3,4-methylenedioxymethamphetamine (ecstasy), one specification of wrongful distribution of marijuana, one specification of wrongful possession of marijuana, one specification of solicitation of distribution of ecstasy, and one specification of breaking restriction, in violation of Articles 92, 112a, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 912a, 934.[2] The military judge sentenced Appellant to a bad-conduct discharge, confinement for 16 months,

---

[1] Effective 1 January 2019, Article 53a of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 853a, as enacted by Section 5237 of the Military Justice Act of 2016 (MJA 2016), a division of the National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, §§ 5001–5542, 130 Stat. 2000, 2894–2968 (2016), created a form of agreement between a convening authority and an accused known as a "plea agreement." Under Executive Order 13,825, § 5, a new version of the Rules for Courts-Martial (R.C.M.) took effect on 1 January 2019, prior to the referral, pretrial agreement, and trial in Appellant's case. 2018 Amendments to the Manual for Courts-Martial, United States, 83 Fed. Reg. 9889, 9890 (8 Mar. 2018). Implementing the new Article 53a, UCMJ, the version of R.C.M. 705 that took effect on 1 January 2019 refers to agreements between a convening authority and the accused as "plea agreements," not "pretrial agreements." However, Executive Order 13,825, § 10, also provided that any change to sentencing procedures made by, *inter alia*, Article 53a, UCMJ, including rules implementing, *inter alia*, Article 53a, UCMJ, would apply only to cases in which all specifications allege offenses committed on or after 1 January 2019. Because this case involves specifications alleging offenses committed before and after 1 January 2019, Article 53a, UCMJ, and R.C.M. 705 to the *Manual for Courts-Martial*, *United States* (2019 ed.) (2019 *MCM*), do not apply to this case. We find the applicable R.C.M. governing Appellant's agreement with the convening authority in this case to be the version of R.C.M. 705 in the *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*) and that reference to a "pretrial agreement," rather than a "plea agreement," is appropriate. Appellant has asserted no error or prejudice regarding the form of his agreement with the convening authority, and we find none.

Unless otherwise noted, all references in this opinion to the Rules for Courts-Martial are to the 2019 *MCM*, *except* references to R.C.M. 705, which shall be to the 2016 *MCM*.

[2] Two of the eight specifications alleging violations of Article 112a, UCMJ, assert offenses that occurred on or after 1 January 2019. All other specifications in this case assert offenses completed before 1 January 2019. Except when referring to the two specifications alleging offenses occurring on or after 1 January 2019, all references in this opinion to the punitive articles of the UCMJ are to the 2016 *MCM*. Unless otherwise noted, all other references in this opinion to the UCMJ are to the 2019 *MCM*.

and reduction to the grade of E-1. Pursuant to the PTA, the convening authority reduced the period of confinement to 12 months. Appellant received 108 days of pretrial confinement credit.

Appellant originally submitted the case to this court on its merits, with no specific assignment of error. We subsequently specified two issues for briefing by counsel for both parties:

> I.
>
> In light of Rule for Courts-Martial (R.C.M.) 705(c)(1)(b), did the military judge err when she:
>
> A. Failed to advise Appellant that his agreement to "waive all waivable motions" could not be enforced to prevent him from raising an R.C.M. 707 speedy trial motion;
>
> B. Implied that "in order to get the benefit" of his pretrial agreement, Appellant had to "give up making these motions," which included an R.C.M. 707 speedy trial motion; and
>
> C. Advised Appellant that his failure to "waive all waivable motions," implicitly including his R.C.M. 707 speedy trial motion, would result in the cancelation of his pretrial agreement?
>
> If so, is appellant entitled to relief?
>
> II.
>
> Did Appellant receive ineffective assistance of counsel when trial defense counsel failed to seek relief for a potential violation of Appellant's right to speedy trial under [R.C.M.] 707? If so, is Appellant entitled to relief?

*United States v. Mar*, No. ACM 39708, 2020 CCA LEXIS 441, at *2 n.2 (A.F. Ct. Crim. App. 10 Dec. 2020) (per curiam) (unpub. op.).

During our initial review of this case we determined the convening authority had failed to take action on the sentence as required by Executive Order 13,825, § 6(b), 83 Fed. Reg. 9889, 9890 (8 Mar. 2018), and Article 60, UCMJ, 10 U.S.C. § 860. As a result, we remanded Appellant's case to the Chief Trial Judge, Air Force Trial Judiciary, for corrective action. *See Mar*, unpub. op. at *8–9. The successor convening authority executed a new Decision on Action memorandum, dated 29 December 2020, and the military judge then issued a

corrected entry of judgment (EoJ), dated 4 January 2021.[3] We find the new decision on action and EoJ remedied the errors identified in this court's earlier opinion.

Upon return of the record to this court, Appellant submitted a supplemental brief to this court "preserv[ing] and maintain[ing]" the issues in his brief on specified issues, and raising two additional assignments of error: (1) whether Appellant's guilty plea for negligently failing to refrain from drinking alcohol while under the legal drinking age, in violation of Article 92, UCMJ, was improvident because the source of the duty—Nevada state law—does not actually proscribe the acts and circumstances Appellant pleaded guilty to; and (2) in the alternative, whether Appellant's trial defense counsel was ineffective when he acquiesced to a pretrial agreement that required Appellant to improvidently plead guilty to an offense based upon an erroneous understanding of state law even though the preliminary hearing officer's report explicitly highlighted this deficiency in the charged offense. Now considering the specified issues and Appellant's assignments of error, we find no error materially prejudicial to Appellant's substantial rights, and we affirm the findings and sentence.

## I. BACKGROUND

Appellant used marijuana on divers occasions between 1 March 2018 and 31 December 2018, and once again between 1 January 2019 and 7 January 2019; used cocaine on divers occasions between 1 May 2018 and 31 December 2018, and once again between 1 January 2019 and 7 January 2019; used ecstasy on divers occasions between 1 December 2017 and 30 June 2018; and ingested psilocybin mushrooms between 1 March 2018 and 30 June 2018. In addition to this wrongful drug use, Appellant distributed marijuana to other Airmen on divers occasions between 22 June 2018 and 24 June 2018, and wrongfully possessed marijuana in his dorm room on 21 August 2018. In October 2018, Appellant drank alcohol despite being under the age of 21 years. On divers occasions between 31 December 2017 and 15 April 2018, Appellant solicited a civilian to distribute ecstasy to him. Finally, on divers occasions between 30 and 31 December 2018, Appellant broke the restriction to limits that

---

[3] In our initial review and remand, we noted the Statement of Trial Results (STR) and entry of judgment (EoJ) erroneously indicated that Charge I constituted a violation of Article 86, UCMJ, 10 U.S.C. § 886. *See United States v. Mar*, No. ACM 39708, 2020 CCA LEXIS 441, at *4 (A.F. Ct. Crim. App. 10 Dec. 2020) (per curiam) (unpub. op.). On remand, the military judge remedied this error by entering a modified EoJ which correctly reflects that Charge I alleged a violation of Article 92, UCMJ, 10 U.S.C. § 892. Appellant has made no claim of prejudice due to the errors in the STR and EoJ or any claim of error in the corrected EoJ, and we find none.

had been imposed upon him by his commander on 21 December 2018. On 7 January 2019, Appellant's commander ordered him into pretrial confinement, where he remained until his court-martial on 25 April 2019.

## II. DISCUSSION

### A. Waiver of Right to Speedy Trial Pursuant to PTA

#### 1. Additional Background

On 26 March 2019, Appellant signed and submitted an offer for a PTA, which was accepted by the convening authority on 1 April 2019. In paragraph 2.b. of the PTA, Appellant offered to "[w]aive all waivable motions," a provision the Defense proposed. Paragraph 5.e.4. further indicated Appellant understood that the PTA would be "cancelled and of no effect" if Appellant refused "to waive all waivable motions."

At trial, the military judge explored the provisions of the PTA with Appellant and trial defense counsel. When the military judge inquired as to the "[w]aive all waivable motions" provision, the following colloquy occurred:

> [Military Judge (MJ)]: Okay. In subparagraph [2.b.], you offer to waive all waivable motions. That basically means that you give up the right to make motions that are waivable under the law. I advise you that certain motions are waived or given up if your defense counsel does not make the motion before entering your plea. Some motions, however, such as motions to dismiss or failure to state an offense can never be given up. Do you understand that this term of your pretrial agreement means that you give up the right to make any motion which bylaw [sic] is given up when you plead guilty?
>
> [Appellant]: Yes, ma'am.
>
> MJ: Defense Counsel, what motions are you not making pursuant to this provision of the pretrial agreement?
>
> [Defense Counsel (DC)]: Yes, ma'am. So first we're giving up an [R.C.M.] 707 speedy trial motion. Airman Mar was restricted on 21 December 2018, starting his speedy trial clock. I believe if I did the math correctly, it was the 21st, so this Saturday would have been the day that he should have been brought to trial by, so it would have violated that. So, we're waving [sic] that waivable motion.

Shortly thereafter, the following exchange occurred:

5

> MJ: Defense Counsel, is there anything else that you want to put on the record with regards to the factual basis for any motion covered by this term?
>
> DC: Not to go with the factual basis, ma'am, I just want to make the distinction that the speedy trial motion would be an [R.C.M.] 707 motion. We're not raising any sort of Article 10[, UCMJ,] or other speedy trial motions.
>
> MJ: Thank you. Airman Mar, knowing what your defense counsel and I have told you, do you want to give up making these motions *in order to get the benefit of your pretrial agreement*?
>
> [Appellant]: Yes, ma'am.
>
> MJ: Do you have any questions about this provision of your PTA?
>
> [Appellant]: No, ma'am.

(Emphasis added). Later, the military judge reiterated to Appellant, "[Y]our failure to waive all waivable motions would result in the cancellation of your PTA and as a result have no effect."

When discussing whether the pretrial restriction should have been included in Blocks 8 and 9 of the charge sheet, trial defense counsel again reiterated his position that R.C.M. 707 had been triggered by the 21 December 2018 restriction. In response, trial counsel asserted that the restriction was "administrative in nature" and "not with an eye towards court-martial, towards any judicial proceedings."

In the clemency request submitted on Appellant's behalf, trial defense counsel again asserted that Appellant's right to a speedy trial had been violated and asked the convening authority to "recognize that the Government violated [Appellant]'s right to a speedy trial as guaranteed by Rule for Courts-Martial 707."

We permitted the Government and Appellant to attach declarations to address the specified issues noted above.[4] Trial defense counsel ultimately submitted two declarations related to the specified issues. In his first declaration,

---

[4] We have assessed whether we may consider these declarations in light of our superior court's decision in *United States v. Jessie*, 79 M.J. 437 (C.A.A.F. 2020). We conclude that we may, in line with precedents permitting consideration of affidavits "necessary for resolving issues raised by materials in the record." *Id*. at 444.

dated 21 August 2020[5] (Counsel's First Declaration), trial defense counsel asserts he recognized a "potential issue" with R.C.M. 707, but "ultimately decided not to file a motion seeking dismissal of charges under R.C.M. 707" based on his "legal research, understanding of the law, knowledge of the specific facts of [Appellant's] case, [Appellant's] stated goals, and [Appellant's] own wishes." Trial defense counsel asserts that on or about 26 March 2019, he told Appellant that an R.C.M. 707 motion would likely succeed, that the remedy could be dismissal with prejudice or without prejudice, but that charges likely would be dismissed without prejudice. Trial defense counsel further declares that he told Appellant that if charges were dismissed without prejudice "there was no guarantee he would be let out [of pretrial confinement] while the [G]overnment made their decision on what to do next," and that "the [G]overnment could take a number of actions including not bringing the charges again, re-filing charges, or appealing the dismissal to Air Force Court of Criminal Appeals." Trial defense counsel states after this advice, Appellant indicated that he wanted to get out of confinement as soon as possible and thought that not making the motion was the best way forward.

Trial defense counsel indicates he repeated this conversation with Appellant "[a] few days before his trial," with the same outcome. During this second conversation, trial defense counsel emphasized to Appellant that if he pleaded guilty according to his then-existing PTA with the convening authority, Appellant would "forfeit" the motion. Trial defense counsel contends that during this conversation, he also told Appellant he could file the motion, but Appellant did not change his opinion. Counsel's First Declaration does not indicate whether defense counsel advised Appellant regarding the effect of the "[w]aive all waivable motions" provision of his PTA.

Trial defense counsel later submitted a second declaration, dated 17 September 2020 (Counsel's Second Declaration), in which he expressed that he wanted to "further supplement the circumstances discussed in [his] 21 August 2020 declaration."[6] In Counsel's Second Declaration, trial defense counsel stated that:

> Prior to and during trial, [Appellant] understood that a pretrial agreement did not prevent the defense from raising an R.C.M.

---

[5] The declaration was initially dated 21 April 2020, but this was later identified as an error and trial defense counsel stated the correct date was 21 August 2020.

[6] Appellant objected to the Government's motion to attach Counsel's Second Declaration on the grounds that it was submitted weeks after our deadline. We granted the Government's motion to attach Counsel's Second Declaration. However, we provided Appellant additional time to file a supplemental brief addressing any new matters. Appellant declined this opportunity.

> 707 speedy trial motion. I indicated on the record that an R.C.M.
> 707 speedy trial violation occurred, however [Appellant] was
> foregoing [sic] raising the motion and wished to proceed with the
> guilty plea. I wanted to preserve the violation for reviewing au-
> thorities, however I did not intend to imply that the pretrial
> agreement precluded raising a motion pursuant to R.C.M[.] 707.

In Appellant's declaration, dated 23 September 2020 (Appellant's Declara-
tion), Appellant states that he remembers discussing the speedy trial motion
with his trial defense counsel and that trial defense counsel told him the mo-
tion would probably result in his charges being temporarily dismissed and re-
filed. Appellant further recounts agreeing that such an outcome would render
filing a speedy trial motion "a waste of time." Appellant further states,

> I relied on [trial defense counsel's] opinion that it was very un-
> likely that the judge would dismiss the charges with prejudice.
> If he would have told me there was a decent chance that the
> charges would be dismissed with prejudice, I would not have
> agreed to waive the motion. This was also based on my under-
> standing that if I wanted a pretrial agreement, I would have to
> agree to give up the motion.

> I did not know that we could file the speedy trial motion without
> cancelling the pretrial agreement I had agreed to. If I had known
> that, I would have wanted to try to get my charges dismissed
> with prejudice before I pleaded guilty, even if dismissal with
> prejudice was very unlikely.

Following our specification of issues, Appellant now asserts he is entitled
to relief related to speedy trial for two reasons. First, he argues the military
judge erred in light of R.C.M. 705(c)(1)(B). Appellant further argues that, but
for the military judge's error, he would have: (1) litigated a motion to dismiss
the charges with prejudice under R.C.M. 707 had he known that doing so would
not have canceled his PTA; or (2) if given the opportunity to litigate the motion
without invalidating the entire PTA, trial defense counsel still would have ad-
vised Appellant to waive the motion, which would have constituted ineffective
assistance of counsel.

Appellant separately asserts he is entitled to relief due to alleged ineffec-
tive assistance of counsel. Appellant argues trial defense counsel "undersold
the chances of Appellant's case being dismissed with prejudice to a degree
measurably below the performance ordinarily expected of fallible lawyers, and
failed to recognize that a speedy trial motion—even if it is otherwise wai-
vable—could not be waived because of a PTA term." Appellant argues he was
prejudiced because if trial defense counsel "had effectively advised Appellant,

8

Appellant would not have agreed to waive the [R.C.M. 707 speedy trial] motion and the military judge would have dismissed the charges with prejudice under R.C.M. 707."

### 2. Law

#### a. Waiver of Right to Speedy Trial as Condition of PTA

The interpretation of a PTA, whether a condition of a PTA violates R.C.M. 705(c)(1)(B), and whether an accused's right to a speedy trial has been violated are questions of law we review de novo. *See United States v. Tate*, 64 M.J. 269, 271 (C.A.A.F. 2007) (citation omitted); *United States v. Acevedo*, 50 M.J. 169, 172 (C.A.A.F. 1999) (citations omitted).

"A term or condition in a pretrial agreement shall not be enforced if it deprives the accused of . . . the right to a speedy trial . . . ." R.C.M. 705(c)(1)(B). "To the extent that a term in a pretrial agreement violates public policy, it will be stricken from the pretrial agreement and not enforced." *United States v. Edwards*, 58 M.J. 49, 52 (C.A.A.F. 2003) (citing R.C.M. 705(c)(1)(B) (additional citation omitted)). "In some cases . . . the presence of an impermissible term requires us to void the entire agreement and authorize a rehearing." *Tate*, 64 M.J. at 272 (citing *United States v. Holland*, 1 M.J. 58, 60 (C.M.A. 1975)). "In other cases . . . an impermissible term may be treated as null without impairing the remainder of the agreement." *Id.* (citing *United States v. McLaughlin*, 50 M.J. 217, 218–19 (C.A.A.F. 1999) (a single impermissible term does not render the entire agreement unenforceable, rather "the Manual merely requires that these terms will not be enforced") (citing R.C.M. 705(c)(1)(B))).

Rules for Courts-Martial 707(a) and 707(a)(2) require that an accused "be brought to trial within 120 days after the . . . imposition of restraint under R.C.M. 304(a)(2)–(4)." A violation of R.C.M. 707 will result in dismissal of charges, either "with or without prejudice to the [G]overnment's right to reinstitute court-martial proceedings against the accused for the same offense at a later date." R.C.M. 707(d)(1).

Rule for Courts-Martial 304 sets forth types of pretrial restraint and the circumstances under which pretrial restraint may be imposed. Rule for Court-Martial 304(a)(2) defines restriction in lieu of arrest as "oral or written orders directing the person to remain within specified limits" while continuing to perform full military duties unless directed otherwise.

"Military law imposes an independent obligation on the military judge to ensure that the accused understands what he gives up because of his plea and the accused's consent to do so must be ascertained." *United States v. Hunter*, 65 M.J. 399, 403 (C.A.A.F. 2008) (quoting *United States v. Resch*, 65 M.J. 233, 237 (C.A.A.F. 2007)). "The accused must know and understand not only the [PTA]'s impact on the charges and specifications which bear on the plea . . . but

also other terms of the [PTA], including consequences of future misconduct or waiver of various rights." *Id*. (omission in original) (quoting *United States v. Felder*, 59 M.J. 444, 445 (C.A.A.F. 2004)) (additional citation omitted). "[A]n inquiry that falls short of these requirements and fails to ensure the accused understands the terms of the [PTA] is error." *Id*. "When . . . an error is found, we will reject the providency of a plea only where the appellant demonstrates a 'material prejudice to a substantial right.'" *Id*. (citation omitted).

A military judge's duties with respect to plea inquiries include ensuring: (1) "there is a basis in law and fact to support the plea and offense[s] charged;" (2) the accused understands and accepts the terms of the PTA; (3) the parties agree to the terms of the agreement; and (4) the terms of the PTA comply with the law and fundamental notions of fairness. *United States v. Soto*, 69 M.J. 304, 307 (C.A.A.F. 2011) (citations omitted). "[M]ilitary judges need to be ever vigilant in fulfilling their responsibility to scrutinize pretrial agreement provisions to ensure that they are consistent with statutory and decisional rules, and 'basic notions of fundamental fairness.'" *Id*. at 307 n.1 (citation omitted). "In order to ensure that pleas of guilty are not only knowing and voluntary but appear to be so, detailed procedural rules govern the military judge's duties with respect to the plea inquiry." *Id*. at 306–07 (citing *United States v. King*, 3 M.J. 458, 459 (C.M.A. 1977)). The military judge's inquiry under R.C.M. 910(f)(4) "is part and parcel of the providence of an accused's plea, and necessary to ensure that an accused is making a fully informed decision as to whether or not to plead guilty." *Id*. at 307.

### b. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution[7] guarantees an accused the right to effective assistance of counsel. *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007); *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). In *Strickland v. Washington*, the Supreme Court of the United States established that to prevail on an ineffective assistance claim, a convicted defendant bears the burden of proving that: (1) defense counsel's performance was deficient; and (2) the defense was prejudiced by the deficient performance. 466 U.S. 668, 698 (1984). Our superior court employs the same test. *See United States v. Carter*, 79 M.J. 478, 480 (C.A.A.F. 2020); *United States v. Captain*, 75 M.J. 99, 103 (C.A.A.F. 2016). We review allegations of ineffective assistance of counsel de novo. *Carter*, 79 M.J. at 480 (citing *United States v. Bradley*, 71 M.J.

---

[7] U.S. CONST. amend. VI.

13, 16 (C.A.A.F. 2012) (additional citation omitted)). "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

When applying *Strickland*'s first prong, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689; *Carter*, 79 M.J. at 480. In assessing the effectiveness of counsel, we begin with the presumption of competence announced in *United States v. Cronic*. 466 U.S. 648, 658 (1984). *See also Gilley*, 56 M.J. at 124 (citing *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000)). Accordingly, an appellant "must surmount a very high hurdle" to successfully assert ineffective assistance of counsel. *Tippit*, 65 M.J. at 76 (internal quotation marks and citations omitted). A reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 689–90. To overcome this presumption, "an appellant must 'show specific defects in counsel's performance that were unreasonable under prevailing professional norms.'" *Carter*, 79 M.J. at 480–81 (internal quotation marks omitted) (quoting *United States v. Mazza,* 67 M.J. 470, 475 (C.A.A.F. 2009) (additional citation omitted)). Reviewing courts "do not measure deficiency based on the success of a trial defense counsel's strategy, but instead examine 'whether counsel made an objectively reasonable choice in strategy' from the available alternatives." *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015) (quoting *United States v. Dewrell*, 55 M.J. 131, 136 (C.A.A.F. 2001) (additional citation omitted)). For this reason, counsel receives "'wide latitude . . . in making tactical decisions.'" *Id.* (quoting *Cullen v. Pinholster*, 563 U.S. 170, 195 (2011) (additional citation omitted)).

Regarding *Strickland*'s second prong, to prove prejudice, an appellant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Pinholster*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at 694); *see also United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012). A "reasonable probability" requires a "substantial," not just "conceivable," likelihood of a different result. *Pinholster*, 563 U.S. at 190. When an allegation of ineffective assistance of counsel is based on a failure to make a motion, "an appellant 'must show that there is a reasonable probability that such a motion would have been meritorious.'" *United States v. McConnell*, 55 M.J. 479, 482 (C.A.A.F. 2001) (quoting *United States v. Napoleon*, 46 M.J. 279, 284 (C.A.A.F. 1997)).

11

**3. Analysis**

***a. Waiver of Right to Speedy Trial as Condition of PTA***

R.C.M. 705(c)(1)(B) states that a "term or condition in a pretrial agreement shall not be enforced if it deprives the accused of . . . the right to a speedy trial . . . ." The PTA in this case included a provision requiring Appellant to "[w]aive all waivable motions." The provision did not explicitly specify the Appellant was required to waive a speedy trial motion. However, when the military judge inquired as to which motions the Defense was waiving due to the "[w]aive all waivable motions" provision in the agreement, trial defense counsel explicitly stated Appellant was waiving an R.C.M. 707 speedy trial motion.[8] Trial defense counsel detailed that the basis of the motion was that Appellant was placed under pretrial restriction on 21 December 2018, more than 120 days prior to his arraignment on 25 April 2019.

A "waive all waivable motions" provision is not *per se* impermissible. *See, e.g.*, *United States v. Chin*, 75 M.J. 220, 223 (C.A.A.F. 2016) (evaluating the impact of a "waive all waivable motions" PTA provision on the right to complete appellate review by courts of criminal appeals). However, as our sister service Courts of Criminal Appeals have observed, it is error for an otherwise permissible term in a PTA to be interpreted and applied in a way to require an accused to waive a right identified in R.C.M. 705(c)(1)(B). *See, e.g.*, *United States v. Pabon*, No. ARMY 20120874, 2014 CCA LEXIS 617, at *2–3 (A. Ct. Crim. App. 21 Aug. 2014) (per curiam) (unpub. op.) ("Although appellant's pretrial agreement did not contain a term that deprived appellant of the right to a speedy trial, the military judge erred in interpreting the waiver clause and informing appellant that the pretrial agreement required appellant to waive a speedy trial motion pursuant to R.C.M. 707."); *United States v. Benitez*, 49 M.J. 539, 540–41 (N.M. Ct. Crim. App. 1998) (explaining a PTA provision "to waive . . . any and all non-constitutional or non-jurisdictional motions," although not explicitly identifying a speedy trial issue, operated to prevent appellant from raising the speedy trial issue at trial when "[t]he military judge essentially advised the appellant that a speedy-trial motion that was not constitutionally-based could be waived in the pretrial agreement").

At trial, multiple references by the military judge, trial defense counsel, and Appellant regarding the effect of the "[w]aive all waivable motions" provision suggest that they all believed the provision required Appellant to waive a

---

[8] We note that in the stipulation of fact entered into by Appellant and the Government, both parties recognized that Appellant "knowingly and voluntarily agreed to waive substantive rights, including . . . alleging that his right to a speedy trial was violated."

potential R.C.M. 707 speedy trial motion.[9] In several interactions on the record, the military judge essentially advised Appellant that the "[w]aive all waivable motions" provision in his PTA required him to waive an R.C.M. 707 speedy trial motion. When the military judge asked trial defense counsel what motions he was waiving due to the "[w]aive all waivable motions" provision, trial defense counsel responded, "Yes, ma'am. So first we're giving up an R.C.M. 707 speedy trial motion." Trial defense counsel then proceeded to detail the basis for the motion. Moments later, the military judge asked Appellant if he wanted to give up the motions trial defense counsel had referred to "in order to get the benefit of [his] pretrial agreement." Appellant responded affirmatively. Later, the military judge reiterated to the Appellant that his failure to waive all waivable motions, implicitly including the R.C.M. 707 motion that trial defense counsel had identified, would "result in the cancellation of your pretrial agreement and as a result have no effect."

In *McLaughlin*, our superior court found that a term in a PTA which required the accused to waive his right to a speedy trial was impermissible and unenforceable. 50 M.J. at 218–19. The United States Court of Appeals for the Armed Forces (CAAF) concluded that the military "judge should have declared this speedy trial provision impermissible and unenforceable, while upholding the remainder of the [PTA]. After so informing appellant, the judge could have then asked him if he wanted to raise a speedy trial issue." *Id.* at 219. Accordingly, in the instant case, upon learning from the trial defense counsel that the Appellant was waiving an R.C.M. 707 speedy trial motion pursuant to the "[w]aive all waivable motions" provision, the military judge should have informed Appellant that the provision was unenforceable to prevent him from raising a speedy trial motion, and then should have asked Appellant whether he wanted to raise any speedy trial motion. Moreover, the military judge should not have advised Appellant that "in order to get the benefit" of his PTA, he had to "give up making" his R.C.M. 707 speedy trial motion.

Our finding that the military judge erred in interpreting, explaining, and applying the "[w]aive all waivable motions" provision to bar an R.C.M. 707 speedy trial motion does not conclude our inquiry. As the CAAF observed in *McLaughlin*, R.C.M. 705(c)(1)(B) only requires that impermissible terms not be *enforced*. *Id.* at 218. Accordingly, the CAAF held that when a PTA contains an impermissible term waiving an appellant's right to make speedy trial motions, to prevail on appeal, an appellant must "set forth sufficient information to show a colorable speedy trial claim." *Id.* In *McLaughlin*, because the CAAF found insufficient information in the record to support a colorable speedy trial

---

[9] Trial counsel did not object to, or otherwise comment on, this interpretation.

claim existed, it concluded the impermissible restriction on raising a speedy trial claim had not been *enforced*.

In contrast to the facts in *McLaughlin*, in this case, the record raises a colorable speedy trial claim. R.C.M. 707(a)(2) requires that an accused "be brought to trial within 120 days after the . . . imposition of restraint under R.C.M. 304(a)(2)–(4)." Restriction in lieu of arrest is a form of pretrial restraint defined as "oral or written orders directing the person to remain within specified limits" while continuing to perform full military duties unless directed otherwise. R.C.M. 304(a)(2). Pretrial confinement is also a form of pretrial restraint. R.C.M. 304(a)(4). After Appellant committed numerous offenses, Appellant's commander restricted him to base on 21 December 2018, 125 days before he was arraigned. Appellant broke that restriction once on 30 December 2018 and once on 31 December 2018, but remained subject to the restriction order continuously until 7 January 2019, when Appellant was ordered into pretrial confinement, where he remained until arraignment on 25 April 2019. These facts raise a colorable speedy trial claim for several of the charges and specifications under R.C.M. 707, which states that an accused shall be brought to trial within 120 days after imposition of restraint under R.C.M. 304(a)(2).[10]

Though we find the record raises a colorable speedy trial claim, the record does not contain sufficient information for us to determine with certainty that Appellant's right to a speedy trial under R.C.M. 707 was, in fact, violated. On 21 December 2018, Appellant's commander restricted him to "Area 1" of Nellis Air Force Base (AFB), where Appellant then lived, and to Creech AFB, where Appellant performed his military duties. As part of this restriction, Appellant was permitted to leave Nellis AFB only on a shuttle to Creech AFB for the purpose of performing his military duties. At trial, while discussing whether

---

[10] R.C.M. 707 is offense-specific. R.C.M. 707(b)(2). We do *not* find a colorable speedy trial claim regarding offenses that could not have been the basis for the 21 December 2018 restriction, specifically, those offenses occurring after 21 December 2018. Additionally, offenses occurring less than 120 days prior to arraignment on 25 April 2019 would not be dismissed based on an R.C.M. 707 speedy trial motion. Offenses not implicated by the errors addressed in this opinion consist of Appellant's wrongful use of marijuana between 1 March 2018 and 31 December 2018 (Specification 1 of Charge II); wrongful use of marijuana between 1 January 2019 and 7 January 2019 (Specification 4 of Charge II); wrongful use of cocaine between 1 May 2018 and 31 December 2018 (Specification 5 of Charge II); wrongful use of cocaine between 1 January 2019 and 7 January 2019 (Specification 6 of Charge II); and breaking restriction between 30 December 2018 and 31 December 2018 (Specification 2 of Charge III). These offenses are not included in our analysis here. We find no material prejudice to Appellant's substantial rights regarding these charges and specifications.

14

the charge sheet should include reference to Appellant's restriction, trial counsel argued that Appellant's 21 December 2018 restriction was "administrative in nature" and "not with an eye towards court-martial, towards any judicial proceedings," which would not trigger the speedy trial clock. *See* R.C.M. 304(h). In pleading guilty to breaking the restriction, Appellant stated he believed his commander imposed the restriction because of Appellant's "continued positive urinalysis tests and alcohol use." Appellant also stated he believed the restriction was for the purpose of maintaining good order and discipline and to prevent him from using controlled substances. Further facts were not developed that clarify whether the restriction was pretrial "restraint on a person's liberty which is imposed before and during disposition of offenses" for purposes of R.C.M. 304 and triggering R.C.M. 707(a)(2).[11] R.C.M. 304(a). Although the issue was not fully litigated, the military judge ultimately concluded that the facts amounted to "restriction in lieu of arrest" under R.C.M. 304 for the purposes of directing that the charge sheet be amended to include identification of Appellant's restriction from 21 December 2018 until his pretrial confinement began on 7 January 2019.

Because the issue was not litigated, the record is relatively quiet as to why it took 125 days from the imposition of restraint to arraign Appellant. Appellant notes that the Government's initial trial ready date was 44 days after referral of charges on 12 March 2019, but the record offers no explanation of this period. The Article 32 preliminary hearing officer's report indicates no delays were requested or granted. The docketing memo in the case, signed by the Chief Circuit Military Judge, excluded three days from R.C.M. 707 speedy trial computation.[12] But the military judge's 22 March 2019 scheduling conference summary and scheduling order neither addresses any speedy trial issues, nor indicates any awareness by counsel or the military judge that she was setting an arraignment date for 122 days (125 days, less the three excluded days) after restriction began or that Appellant was in pretrial confinement. Additionally, the record is silent as to whether the Defense ever demanded speedy trial or objected to the military judge setting the arraignment date. Notably, Appellant's Declaration provides no additional facts on this point.

Related to the military judge's error in interpreting and applying the "[w]aive all waivable motions" provision of the PTA in a way that violated

---

[11] Trial defense counsel and Appellant explicitly agreed the restriction did not constitute illegal pretrial punishment under Article 13, UCMJ.

[12] The Chief Circuit Military Judge excluded 22–24 April 2019 from speedy trial computation. Ostensibly, this was because the Government indicated it was ready to proceed to trial on 22 April 2019, defense counsel indicated a ready date of 29 April 2019, and the parties ultimately agreed to an arraignment on 25 April 2019.

R.C.M. 705(c)(1)(B) is R.C.M. 910(f)(4)(A)(i)'s requirement that the military judge inquire to ensure the accused understands the terms of the PTA. Appellant asserts that he did not understand that the "[w]aive all waivable motions" provision should not have barred an R.C.M. 707 speedy trial motion. An accused must "know and understand not only the agreement's impact on the charges and specifications which bear on the plea . . . but also other terms of the agreement, including consequences of future misconduct or waiver of various rights." *Hunter*, 65 M.J. at 403 (omission in original) (quoting *Felder*, 59 M.J. at 445) (additional citation omitted). "'[A]n inquiry [by the military judge] that falls short of these requirements and fails to ensure the accused understands the terms of the agreement is error.'" *Id.*

In Counsel's Second Declaration, trial defense counsel assures this court that Appellant, "[p]rior to and during trial . . . understood that a pretrial agreement did not prevent the defense from raising an R.C.M. 707 speedy trial motion." While this may have been counsel's impression of Appellant's understanding, it is inconsistent with the meaning and effect of the "[w]aive all waivable motions" provision as the military judge and trial defense counsel conveyed them to the Appellant on the record at trial. We give significant weight to statements at trial. *See, e.g.*, *United States v. Craven*, 69 M.J. 513, 515 (A.F. Ct. Crim. App. 2010) (holding that in determining the meaning of ambiguous PTA terms, appellate courts should give the greatest weight to the parties' stated understanding at trial).

To summarize: (1) trial defense counsel told the military judge the Defense was waiving an R.C.M. 707 speedy trial motion due to the "[w]aive all waivable motions" provision; (2) the military judge asked Appellant if he wanted to give up his waivable motions, including the R.C.M. 707 speedy trial motion, "*in order to get the benefit of [his] pretrial agreement*" (emphasis added); and (3) the military judge instructed Appellant that his failure to waive all waivable motions, including the R.C.M. 707 speedy trial motion to which she and trial defense counsel had alluded, would result in the cancellation of his PTA. As discussed above, each of these statements was incorrect. Moreover, Appellant confirmed on the record that he understood that in order to keep his PTA he was required to waive all waivable motions, which, based on trial defense counsel's and the military judge's commentary on the record, Appellant would reasonably have understood to include the R.C.M. 707 speedy trial motion.

Rather than inquiring to ensure Appellant understood the meaning and effect of the "[w]aive all waivable motions" provision on his right to raise a speedy trial motion, the military judge's inquiry effectively ensured the Appellant did *not* accurately understand its meaning and effect. Accordingly, we find the military judge erred in her responsibility under R.C.M. 910(f)(4)(A)(i). *See Soto*, 69 M.J. at 307 (the military judge's inquiry under R.C.M. 910(f)(4) "is

part and parcel of the providence of an accused's plea, and necessary to ensure that an accused is making a fully informed decision as to whether or not to plead guilty" (citing *King*, 3 M.J. at 458–59)).

Though we find error under R.C.M. 910(f), Appellant retains the burden under Article 59(a), UCMJ, 10 U.S.C. § 859(a), to demonstrate material prejudice to a substantial right. *Felder*, 59 M.J. at 446. Here, Appellant has not averred he would have withdrawn from the PTA or decided to plead not guilty if he had understood correctly the "[w]aive all waivable motions" provision. The prejudice he claims is that, had he correctly understood the effect of R.C.M. 705(c)(1)(B), he would have wanted to raise an R.C.M. 707 speedy trial motion. We evaluate this prejudice in Section II.A.3.c., *infra*.

### b. Trial Defense Counsel's Performance – Speedy Trial Issue

To prevail on an ineffective assistance claim, Appellant bears the burden of proving that: (1) the performance of defense counsel was deficient; and (2) Appellant was prejudiced by the error. *See Strickland*, 466 U.S. at 698; *Carter*, 79 M.J. at 480; *Captain*, 75 M.J. at 103.

On appeal, Appellant initially asserted no ineffective assistance of counsel claim. After we specified issues, Appellant now argues trial defense counsel was ineffective in two ways. First, Appellant alleges trial defense counsel's advice to Appellant "undersold" the chances of Appellant's case being dismissed with prejudice, to a degree measurably below the performance ordinarily expected of fallible lawyers. Second, Appellant alleges trial defense counsel failed to recognize that a speedy trial motion, even if otherwise waivable, could not be waived because of a PTA term.

### i) "Underselling" chance for dismissal with prejudice

The overwhelming focus of Appellant's allegation of ineffective assistance of counsel is premised on his claim that trial defense counsel "undersold" the chances of Appellant's case being dismissed with prejudice. Appellant acknowledges that trial defense counsel discussed a possible R.C.M. 707 speedy trial motion with Appellant. Appellant further agrees that trial defense counsel advised Appellant that a R.C.M. 707 motion would "probably" result in "the case" being dismissed, but that "the dismissal would likely be without prejudice" because "there was no prejudice to really point to based on the facts."[13]

---

[13] In light of our conclusion that there was no colorable claim of an R.C.M. 707 speedy trial violation for offenses that occurred after the 21 December 2018 restriction and within 120 days of arraignment, it is arguable that trial defense counsel *oversold* the chances of dismissal of "the case." Neither party makes such a claim and we do not evaluate it here.

Upon finding an R.C.M. 707 violation, a military judge has discretion regarding whether to dismiss charges with or without prejudice, unless the military judge determines the accused has been deprived of his constitutional right to a speedy trial, in which case the military judge must dismiss all affected charges with prejudice. R.C.M. 707(d)(1). As noted above, though the record establishes sufficient facts to raise a colorable speedy trial claim, it does not contain sufficient facts for us to determine with certainty that a speedy trial claim would have been successful, or whether, if successful, charges would have been dismissed with prejudice. Trial defense counsel acknowledged on the record that Appellant was not raising "any sort of Article 10 or other speedy trial motions," ostensibly including a Sixth Amendment speedy trial claim. Further, Appellant has made no constitutional claim on appeal.

Appellant's argument that trial defense counsel undersold the chances of dismissal with prejudice to a degree measurably below the performance ordinarily expected of fallible lawyers rests on what he suggests is a favorable comparison to one case: *United States v. Dooley*. 61 M.J. 258 (C.A.A.F. 2005). In *Dooley*, the CAAF upheld a military judge's decision to dismiss charges with prejudice because of a speedy trial violation under R.C.M. 707. *Id.* at 265. While there are some similarities between Appellant's circumstances and those in *Dooley*—for example, in Dooley there was a 125-day period between imposition of pretrial restraint and arraignment—there are also key differences, including completely different charges in the two cases and the appellant in *Dooley* being recalled to active duty after five years of appellate leave. *Id.* at 258, 265. In any event, *Dooley* does not stand for the proposition that military judges *must* dismiss with prejudice under such or similar circumstances.

Trial defense counsel, in his first declaration, asserts that in evaluating Appellant's speedy trial claim, he considered *Dooley*, but also considered other cases regarding speedy trial and prejudice. Based on this research, trial defense counsel determined dismissal under R.C.M. 707 would most likely be without prejudice. The other cases trial defense counsel considered at least suggest a dismissal of charges with prejudice was less likely in Appellant's case than Appellant now contends. *See, e.g.*, *United States v. Danylo*, 73 M.J. 183, 185, 189 (C.A.A.F. 2014) (noting this court had overturned the military judge's dismissal with prejudice when the appellant was restricted to base for 123 days before trial and restriction included a required escort whenever the appellant left his dormitory; also finding insufficient prejudice for a constitutional violation despite the appellant serving two months of pretrial confinement beyond his adjudged sentence due to pretrial delays); *United States v. Edmond*, 41 M.J. 419 (C.A.A.F. 1995) (not specifically addressing an R.C.M. 707 violation, but observing that when assessing whether there has been sufficient prejudice to

assert a constitutional speedy trial violation, courts have considered "truly neglectful government attitudes; intentional versus isolated unwitting violations; excuses for the delay . . . responsibility for the delay[;] intentional dilatory conduct[;] a pattern of neglect[;] and simple inadvertence" (internal quotation marks and citations omitted)); *United States v. Bray*, 52 M.J. 659 (A.F. Ct. Crim. App. 2000) (affirming military judge's decision finding prejudice when the Government kept accused in pretrial confinement 237 accountable days *beyond* the 120 days allotted by R.C.M. 707(a) to bring the accused to trial). In light of the research conducted by trial defense counsel and the broad spectrum of ways in which courts evaluate prejudice in fact-specific cases, we cannot say that trial defense counsel's conclusion that dismissal with prejudice was unlikely was "unreasonable under prevailing professional norms." *Strickland*, 466 U.S. at 688.

Other than pointing to some similarities between *Dooley* and Appellant's case, Appellant has identified nothing in the record that renders unreasonable trial defense counsel's conclusion that there was little evident prejudice upon which Appellant could rely to support arguing for dismissal of charges with prejudice. The fact that in one case a military judge's decision to dismiss charges with prejudice was upheld on appeal is a far cry from demonstrating that trial defense counsel's advice involved specific defects that were "unreasonable under prevailing professional norms." *Id.* Appellant has not overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that counsel "made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 689–90. Nor can we say that defense counsel's conclusion and advice to Appellant that, if the speedy trial motion was successful, charges would have been dismissed without prejudice, lacks reasonable explanation or fell measurably below the performance ordinarily expected of fallible lawyers. *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991). Appellant has not met his burden of demonstrating trial defense counsel was ineffective in advising Appellant that dismissal of charges due to an R.C.M. 707 speedy trial motion would "likely be without prejudice."

### ii) Failure to "recognize" PTA provision did not waive a motion to dismiss for a speedy trial violation

Appellant's ineffective assistance of counsel argument relies heavily—almost exclusively—on the argument that trial defense counsel's evaluation of the likelihood of dismissal of charges with prejudice was erroneous, a claim we have rejected. But Appellant also alleges trial defense counsel was ineffective for failing to recognize that a motion to dismiss for a speedy trial violation—even if otherwise waivable—could not be waived by the terms or provisions of a PTA. Appellant argues that because of trial defense counsel's underselling of

the chances of dismissal with prejudice and his failure to "recognize" that a PTA could not require waiver of a speedy trial motion, counsel failed to effectively advise Appellant. Beyond this bare assertion, Appellant's brief offers no facts or argument regarding trial defense counsel's failure to recognize that a speedy trial motion could not be waived because of a PTA term. Neither Appellant's Declaration nor brief alleges trial defense counsel misinformed Appellant regarding the effect of the "[w]aive all waivable motions" provision in the PTA, or even allege trial defense counsel failed to inform Appellant regarding the effect of the provision. Although Appellant's Declaration states it was his "understanding" that if he wanted a PTA he would have to give up the pretrial motion, it does not state that trial defense counsel's advice was the source of that misunderstanding.

Trial defense counsel contests Appellant's assertion that Appellant did not recognize that a speedy trial motion could not be waived because of a PTA. He proclaims that Appellant, prior to and during trial, "understood that a pretrial agreement did not prevent the defense from raising an R.C.M. 707 speedy trial motion." However, as we addressed above, this assertion is belied by trial defense counsel's own words on the record at trial when he told the military judge that the Defense was "giving up" an R.C.M. 707 speedy trial motion pursuant to the "[w]aive all waivable motions" provision of the PTA. Trial defense counsel explains that when making this statement he "did not intend to imply that the pretrial agreement precluded raising a motion pursuant to R.C.M 707." But counsel did not *imply* that the PTA term precluded raising a speedy trial motion; he *explicitly stated* that Appellant was waiving his R.C.M. 707 motion because of the "[w]aive all waivable motions" provision about which the military judge had just inquired. Contrary to what trial defense counsel now contends, his statements at trial are direct evidence—indeed, the only direct evidence available to us—that he believed that the "[w]aive all waivable motions" provision in the PTA required the Defense to waive the speedy trial motion, a motion that is otherwise waivable under R.C.M. 907(b)(2)(A). As we noted above, R.C.M. 705(c)(1)(B) does not permit a term in a PTA to deprive the accused of the right to a speedy trial. Trial defense counsel's statement at trial reflected an erroneous understanding of the law and the effect of the "[w]aive all waivable motions" provision.

To prevail on an ineffective assistance of counsel claim, "an appellant must show specific defects in counsel's performance that were unreasonable under prevailing professional norms." *Carter*, 79 M.J. at 480–81 (internal quotation marks and citations omitted). "Ignorance of the law on a material matter cannot be the prevailing norm in the legal profession or in the court-martial process." *United States v. Williams*, 53 M.J. 293, 296 (C.A.A.F. 2000). Trial defense counsel's statement on the record that he was waiving a speedy trial motion pursuant to the "waive all waivable motions" provision in the PTA evinced a

misunderstanding of the meaning and effect of R.C.M. 705(c)(1)(B). This was a material matter in this case, because it related to Appellant's ability to raise a charge-dispositive motion. Even if we were to accept that trial defense counsel accurately understood the meaning and effect of R.C.M. 705(c)(1)(B), his statement to the military judge misrepresented what he now asserts was the real reason he did not raise an R.C.M. 707 motion: because he believed it was not in his client's best interest under the circumstances. There are a variety of sound strategic reasons why a defense counsel might wish to allude to a motion he is not raising. However, in this case, trial defense counsel's representation to the court as to the reason he was not raising the motion had the effect of misadvising the military judge and Appellant regarding the availability of the speedy trial motion despite the PTA's "waive all waivable motions" provision, and agreeing to an incorrect legal position that restricted his client's options more than the law allows.

Appellant has not explicitly offered any other evidence that trial defense counsel misinformed him regarding the effect of the "waive all waivable motions" provision. For instance, Appellant has not asserted that when advising him regarding the offer for PTA trial defense counsel told him that he would be required to give up a speedy trial motion in order to obtain a PTA. This is important, because for an ineffective assistance of counsel claim, Appellant bears the burden of "show[ing] *specific defects in counsel's performance* that were unreasonable under prevailing professional norms." *Carter*, 79 M.J. at 480–81 (emphasis added) (internal quotation marks and citations omitted). Absent any further allegation by Appellant of *specific defects*, we are left solely with trial defense counsel's explicit statement on the record reflecting an erroneous understanding of R.C.M. 705(c)(1)(B). Nevertheless, this statement on the record at trial leads us to conclude that Appellant did not accurately understand the meaning and effect of the "[w]aive all waivable motions" provision of his PTA, and to further infer that this misunderstanding was at least in part due to trial defense counsel.

Trial defense counsel's error does not constitute ineffective assistance of counsel unless Appellant shows he was prejudiced by this error. In the context of ineffective assistance of counsel, to show prejudice, Appellant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Pinholster*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at 694); *see also Gooch*, 69 M.J. at 362. It is the question of prejudice to which we now turn.

### c. Prejudice

We have concluded the military judge erred under R.C.M. 705(c)(1)(B) and R.C.M. 910(f)(4) by interpreting the "[w]aive all waivable motions" provision to

require Appellant to waive a R.C.M. 707 speedy trial motion, and advising Appellant of the same. However, R.C.M. 705(c)(1)(B) is only violated if a PTA term or condition is *enforced* to deprive an accused of the right to a speedy trial. *McLaughlin*, 50 M.J. at 218 (noting that R.C.M. 705(c)(1)(B) "merely requires that these terms will not be enforced"). Moreover, an error under R.C.M. 705(c)(1)(B) or R.C.M. 910(f)(4) only requires remedy if we find the error "materially prejudice[d] the substantial rights of [Appellant]." Article 59, UCMJ, 10 U.S.C. § 859. If Appellant would not have raised a motion to dismiss for a speedy trial violation at trial, even if given the opportunity to do so without invalidating his PTA—as was his right—the "[w]aive all waivable motions" provision of the PTA was not enforced to deprive him of his right to a speedy trial, and Appellant was not prejudiced. *See, e.g.*, *United States v. Chavez-Corrales*, No. ARMY 20120640, 2014 CCA LEXIS 577, at *11–12 (A. Ct. Crim. App. 31 Jul. 2014) (unpub. op.) (holding that a "waive all waivable motions" provision in a PTA did not impermissibly require the appellant to waive his right to a speedy trial because there was no meritorious motion to make).

Regarding the military judge's error under R.C.M. 705(c)(1)(B), Appellant argues the following prejudice: "(1) but for the military judge's error, Appellant would have successfully litigated a motion to dismiss the charges with prejudice under R.C.M. 707; or (2) given the opportunity to litigate the motion without invalidating the entire pretrial agreement, trial defense counsel would still have advised Appellant to waive the motion."[14]

We have also found trial defense counsel's performance was deficient under *Strickland*'s first prong because of counsel's statement to the military judge that the Defense was waiving an R.C.M. 707 speedy trial motion due to the "[w]aive all waivable motions" provision in the PTA. This statement effectively—and erroneously—advised the military judge and Appellant that a speedy trial motion had to be waived in order to preserve Appellant's PTA.

However, *Strickland*'s second prong requires Appellant to show there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. When an allegation of ineffective assistance of counsel is based on a failure to make a motion, "an appellant must show that there is a reasonable probability that such a motion would have been meritorious." *McConnell*, 55 M.J. at 482 (internal quotation marks and citation omitted). Appellant asserts that the combination of trial defense counsel's "underselling" of the likelihood of dismissal with prejudice and trial defense counsel's failure to recognize that a speedy trial motion could not be waived because of a PTA term resulted in the prejudice because had

---

[14] While not entirely clear, the latter theory of prejudice seems to argue that the military judge's error permitted trial defense counsel's error.

trial defense counsel "effectively advised Appellant, Appellant would not have agreed to waive the [R.C.M. 707 speedy trial] motion and the military judge would have dismissed the charges with prejudice under R.C.M. 707." Having found trial defense counsel's advice to Appellant regarding the likelihood of dismissal with prejudice to not be deficient under *Strickland*'s first prong, we will evaluate only whether trial defense counsel's failure to recognize that a speedy trial motion could not be waived because of a PTA term prejudiced Appellant.

In this case, the measure of prejudice to Appellant due to the military judge's errors, and whether the trial defense counsel's deficiency meets the *Strickland* requirement of prejudice, distills to the same question: absent each of the errors, would trial defense counsel have raised an R.C.M. 707 speedy trial motion and prevailed? We conclude trial defense counsel would not have raised such a motion absent the errors, and thus Appellant was not prejudiced by the errors.

On the question of whether trial defense counsel would have raised an R.C.M. 707 speedy trial motion—if Appellant had been informed of the opportunity at trial to do so, as he should have been—trial defense counsel's and Appellant's declarations conflict on a central point: whether Appellant understood that the PTA did not prevent him from raising a motion to dismiss for violation of his R.C.M. 707 right to speedy trial. Appellant's Declaration asserts that had he known the Defense could file the speedy trial motion without cancelling the PTA, he would have "wanted to try to get [his] charges dismissed with prejudice before [he] pleaded guilty." By contrast, Counsel's Second Declaration asserts that Appellant knew before and during trial that the PTA did not prevent a speedy trial motion. Even resolving this factual dispute in Appellant's favor and accepting the facts as alleged in Appellant's Declaration, Appellant has not met his burden to demonstrate material prejudice to a substantial right.[15] Demonstrating that Appellant did not understand the effect of R.C.M. 705(c)(1)(B) is not the same as demonstrating that that misunderstanding is the reason the trial defense counsel did not raise the motion.

---

[15] We considered the factors articulated by our superior court in *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997), in determining whether we were required to order a post-trial evidentiary hearing pursuant to *United States v. DuBay*, 37 C.M.R. 411, 413 (C.M.A. 1967) and concluded no such hearing is required. The only *Ginn* factor bearing on this case is the first, under which we can reject an ineffective assistance of counsel claim without ordering a hearing if we can resolve any factual disputes raised by Appellant's Declaration in Appellant's favor and still find Appellant would not be entitled to relief. *Ginn*, 47 M.J. at 248. Because we find Appellant would not be entitled to relief even if we accept Appellant's Declaration as correct, a hearing is not required.

Appellant has not offered facts, or even presented meaningful argument, that demonstrate trial defense counsel would have raised an R.C.M. 707 speedy trial motion had the errors we have identified not occurred. To meet his burden on *Strickland*'s second prong for proving ineffective assistance of counsel, Appellant must demonstrate that, but for trial defense counsel's error regarding the effect of R.C.M. 705(c)(1)(B), there is a reasonable probability that trial defense counsel would have raised the motion and it would have been successful. Appellant hardly makes this claim. Appellant's brief devotes half of one sentence to directly addressing ineffective assistance of counsel for failing to understand R.C.M. 705(c)(1)(B). Appellant argues that, in addition to under-selling the chance of dismissal with prejudice, trial defense counsel "failed to recognize that a speedy trial motion—even if it is otherwise waivable—could not be waived because of a PTA term." Appellant does not offer any explanation of how this was ineffective, nor does he allege, in his declaration or brief, that the reason trial defense counsel did not raise the speedy trial motion was because he misunderstood R.C.M. 705(c)(1)(B).

In fact, Appellant seems to concede that even if the military judge had properly advised Appellant and trial defense counsel of the meaning and effect of R.C.M. 705(c)(1)(B), trial defense counsel still would not have raised the motion. Contending that Appellant is entitled to relief due to the military judge's R.C.M. 705(c)(1)(B) error, Appellant argues that, but for the military judge's error, Appellant would either have litigated the R.C.M. 707 motion or "*given the opportunity to litigate the motion without invalidating the entire PTA*, [trial defense counsel] would still have advised Appellant to waive the motion, which would constitute ineffective assistance of counsel." (Emphasis added.) If trial defense counsel still would have advised Appellant against raising a speedy trial motion even if given the opportunity to litigate the motion without invalidating the PTA, trial defense counsel's misunderstanding of R.C.M. 705(c)(1)(B), and its effect on the "[w]aive all waivable motions" provision, was not the reason the Defense did not file the motion.

While trial defense counsel and Appellant now disagree regarding whether Appellant understood that he could have raised a speedy trial motion and retained his PTA, their declarations are consistent on a key point: the strategic reasons no R.C.M. 707 speedy trial motion was filed. Before trial, trial defense counsel considered a speedy trial motion and discussed it with Appellant. Trial defense counsel predicted that although the motion would have been successful in getting the charges dismissed, the charges likely would have been dismissed without prejudice, potentially allowing the dismissed charges to be re-preferred and referred to trial by general court-martial. Moreover, Appellant had

secured a favorable PTA with the convening authority that included a confinement cap of 12 or 15 months,[16] when Appellant otherwise faced a maximum confinement period of over 39 years and 4 months.[17] Trial defense counsel advised his client that had they successfully obtained a dismissal of charges without prejudice, Appellant faced the prospect of a subsequent trial by general court-martial, possibly with a less favorable PTA, or no PTA at all. Finally, trial defense counsel informed Appellant there was no guarantee that Appellant would be released from pretrial confinement while the Government decided what to do with the dismissed charges, including "re-filing" the charges or appealing. Appellant informed trial defense counsel that he wanted to leave confinement as soon as possible and thought that not making a speedy trial motion was the best way forward. For his part, trial defense counsel made the strategic decision against filing the R.C.M. 707 speedy trial motion after "weighing the likely remedy in this case of dismissal without prejudice, concerns that [they] would not be able to reach an equally favorable Pre-Trial Agreement at a future trial, and [his] client's stated priority of resolving the case as quickly as possible." Trial defense counsel's assertions regarding Appellant's rationale for forgoing the speedy trial motion are not controverted by Appellant's Declaration. Considering Appellant's clearly expressed desire to resolve the charges quickly and leave confinement as soon as possible, trial defense counsel's decision to not file the speedy trial motion was an objectively reasonable choice in strategy from available alternatives. *See Akbar*, 74 M.J. at 379.

Notably, Appellant's Declaration asserts, "If [trial defense counsel] would have told me there was a decent chance that the charges would be dismissed with prejudice, I would not have agreed to waive the motion." But trial defense counsel would *not* have told Appellant this because none of the considerations that had led trial defense counsel to not raise the R.C.M. 707 motion before trial would have changed. If, at trial, the military judge and trial defense counsel had properly informed Appellant that he could litigate the R.C.M. 707 motion *and* keep his PTA, and had trial defense counsel correctly understood the same, trial defense counsel would have relied on the same strategic considerations upon which he had already relied when deciding not to raise the R.C.M. 707 motion. Specifically, trial defense counsel would have considered that: (1)

---

[16] The PTA capped confinement at 12 months if a punitive discharge was adjudged.

[17] After Specification 1 of Charge I (violation of Article 92, UCMJ) was withdrawn and four specifications of wrongful use of a controlled substance (violation of Article 112a, UCMJ) were merged into two specifications for the purpose of sentencing, the maximum possible confinement was 39 years and 4 months.

if successful, the speedy trial motion would likely result in dismissal of charges without prejudice; (2) a dismissal with prejudice was unlikely; (3) a dismissal without prejudice would mean the Government could re-prefer and refer the charges, resulting in further delay and possible extension of Appellant's pretrial confinement;[18] and (4) Appellant might not be able to achieve as favorable—or any—PTA if charges were dismissed and preferred and referred again.

In sum, had the military judge properly ensured Appellant understood that the "[w]aive all waivable motions" provision in the PTA did not bar him from raising an R.C.M. 707 motion, and had trial defense counsel properly advised Appellant of the same, trial defense counsel still would not have filed an R.C.M. 707 speedy trial motion.

Appellant has not demonstrated that the military judge's errors caused the Defense to forgo the R.C.M. 707 speedy trial motion. Thus, the "[w]aive all waivable motions" provision in the PTA was not enforced against Appellant in violation of R.C.M. 705(c)(1)(B) and did not materially prejudice Appellant's substantial rights. Similarly, because the Defense would not have raised an R.C.M. 707 motion even if Appellant had correctly understood the effect of the "[w]aive all waivable motions" provision, the military judge's failure to ensure Appellant understood the provision as required under R.C.M. 910(f)(4) did not result in any material prejudice to the substantial rights of the Appellant. Finally, Appellant has failed to prove that, but for counsel's failure "to recognize that a speedy trial motion—even if it is otherwise waivable—could not be waived because of a PTA term," trial defense counsel would have raised an R.C.M. 707 speedy trial motion or the result of the proceeding would have been different. Accordingly, Appellant's ineffective assistance of counsel claim fails due to his failure to demonstrate prejudice.

## B. Providence of Plea Regarding Nevada Law

### 1. Additional Background

Appellant pleaded guilty to dereliction of duty under Article 92, UCMJ, for failing to "refrain from drinking alcohol while under the legal drinking age, as

---

[18] We note that had a motion to dismiss based on an R.C.M. 707 speedy trial violation been successfully raised, the military judge may have ordered Appellant released from pretrial confinement for the dismissed charges. However, Appellant might have remained confined as part of findings and sentence regarding the charges and specifications that could not have been dismissed under a motion asserting a speedy trial violation: the charged misconduct that occurred less than 120 days before Appellant was arraigned. Because neither trial defense counsel nor Appellant have asserted they appreciated that not all charges would have been dismissed pursuant to a successful motion based on an R.C.M. 707 violation, we do not consider it for purposes of analyzing what would have happened absent the errors we have identified.

it was his duty to do." Appellant now claims his plea was improvident because he did not have a duty to refrain from consuming alcohol while under the age of 21 years, given the specific location where he consumed alcohol.

At trial, Appellant indicated he understood he had a military duty to refrain from consuming alcohol because of his age. During inquiry by the military judge, the following colloquy occurred:

> MJ: A "duty" may be imposed by regulation, a lawful order, or custom of the service. Do you agree that you had a duty to refrain from drinking alcohol while under the legal drinking age?
>
> [Appellant]: Yes, ma'am.
>
> MJ: How was that duty or duties imposed? Was it your duty because of a regulation, a lawful order, custom of service, where does the duty come from?
>
> [Appellant]: Ma'am, it's my understanding that there are regulations and laws and that it is the custom of service to follow local laws, and that I had a duty not to drink until I turned 21.
>
> . . . .
>
> MJ: What exactly did you do, or fail to do, that made you derelict in the performance of your duties?
>
> [Appellant]: I drank alcohol even though I was 20 years old, and the legal drinking age is 21.
>
> . . . .
>
> [Appellant]: I drank the wine even though I was only 20 at the time. I did this even though I was aware that the legal drinking age is 21.

In the stipulation of fact, Appellant also acknowledged he was derelict in his duty to obey Nevada law by drinking alcohol while under the legal drinking age.

The military judge also inquired as to the location of Appellant's alcohol consumption:

> MJ: Where were you at the time?
>
> [Appellant]: I was at Nellis Air Force Base, by the building triple seven.
>
> MJ: What kind of building is building triple seven?
>
> [Appellant]: It's a dormitory for Airm[e]n.

Later, Appellant further described what happened:

> On 8 October 2018, I was having a get together with some of my friends. We were hanging out in the dorms of building triple seven. Someone I didn't know exactly who brought some alcohol and specifically I remember there being wine. I drank some of the wine from the bottle and I cannot recall exactly how much I drank, but after drinking the wine I felt more mellow and calm. And I drank the wine even though I was only 20 at the time. I did this even though I was aware that the legal drinking age is 21.

In addition to his testimony, the stipulation of fact touched upon the location of Appellant's consumption of alcohol. Specifically, Appellant stipulated that security forces "responded to an argument *near* building 777 on Nellis AFB, Nevada." (Emphasis added). Once on scene, another Airman "spontaneously uttered that [he and Appellant] and the other two members present had been consuming alcohol."

### 2. Law

A military judge abuses her discretion when accepting a plea if she does not ensure the accused provides an adequate factual basis to support the plea during the providence inquiry. *See United States v. Care*, 40 C.M.R. 247, 250–51 (C.M.A. 1969). The military judge may consider both the stipulation of fact and the inquiry with the appellant when determining if the guilty plea is provident. *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014). "In reviewing the providence of [an a]ppellant's guilty pleas, we consider his colloquy with the military judge, as well any inferences that may reasonably be drawn from it." *United States v. Carr*, 65 M.J. 39, 41 (C.A.A.F. 2007) (citing *United States v. Hardeman*, 59 M.J. 389, 391 (C.A.A.F. 2004)). This is an area in which the military judge is entitled to significant deference, given the often undeveloped factual record in such cases as compared to that of a litigated trial. *See United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008) (citing *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F. 2002)).

When determining if a guilty plea is provident we ask whether the record presents a substantial basis in law or fact for questioning it. *See id.*; *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991). At trial, the military judge must ensure the accused understands the facts (what he did) that support his guilty plea, the judge must be satisfied that the accused understands the law applicable to his facts (why he is guilty), and that he is actually guilty. *See United States v. Medina*, 66 M.J. 21, 26 (C.A.A.F. 2008).

Evidence must be presented at trial to prove the existence of a duty in order to satisfy the first element of an Article 92(3), UCMJ, dereliction of duty offense. *See United States v. Tanksley*, 36 M.J. 428, 430 (C.M.A. 1993). To the

extent military duties are not clearly assigned, "common sense and military custom help fill in the gaps." *United States v. Shelly*, 19 M.J. 325, 328 (C.M.A. 1985).

Under R.C.M. 811(e), "a stipulation of fact that has been accepted is binding on the court-martial and may not be contradicted by the parties."

Paragraph 1 of Section 202.020 of the Nevada Revised Statutes states: "[e]xcept as otherwise provided in this section, a person under 21 years of age who purchases any alcoholic beverage or any such person who consumes any alcoholic beverage in any saloon, resort or premises where spirituous, malt or fermented liquors or wines are sold is guilty of a misdemeanor." Nev. Rev. Stat. § 202.020 ¶ 1 (2015). Paragraph 2 of this same statute states: "[e]xcept as otherwise provided in this section, a person under 21 years of age who, for any reason, possesses any alcoholic beverage in public is guilty of a misdemeanor . . . ." Nev. Rev. Stat. § 202.020 ¶ 2 (2015). Paragraph 7 permits stricter local restrictions, stating "[t]his section does not preclude a local governmental entity from enacting by ordinance an additional or broader restriction . . . ." Nev. Rev. Stat. § 202.020 ¶ 7 (2015).

Clark County, Nevada Code of Ordinances § 12.12.050, states "[i]t is unlawful for any person under the age of twenty-one years to buy, receive, have in his possession or consume outside of his dwelling place any beer, or malt beverage, or alcoholic beverage."

### 3. Analysis

#### a. Providence of Plea

Appellant now contends that the conduct he admitted during the *Care* inquiry did not actually violate Nevada's law against underage drinking because he did not admit to purchasing alcohol, or consuming alcohol in a prohibited establishment, or possessing alcohol in public. However, Appellant's testimony during the *Care* inquiry explicitly demonstrated his understanding that he had a military duty—imposed by custom of the service—to obey "local law." Applicable local law prohibited his consumption of alcohol while under age 21 while outside his "dwelling place."[19] *Id*.

---

[19] We take judicial notice of the fact that Nellis Air Force Base, where Appellant consumed the alcohol in question, is wholly located in Clark County, Nevada, and that Clark County, Nevada, is a political subdivision of the state of Nevada, drawing all authority from the state. *See* Nev. Rev. Stat. § 244.137 (2017).

We recognize there may be some question regarding whether consumption of alcohol in a dormitory building, but outside the consumer's assigned dormitory room, would be "outside of his dwelling place," but we need not reach that question here. When the military judge asked where he consumed alcohol, Appellant specifically admitted he was drinking "by" the dormitory building. There is no evidence to suggest that when Appellant said the word "by," which means "near,"[20] that he actually intended to say "inside." Consistent with his testimony that he had been drinking alcohol "by" the dormitory building, the stipulation of fact indicated that when law enforcement personnel responded to an argument "*near* building 777" (emphasis added), one of the Airmen told security forces that Appellant had been consuming alcohol.

While Appellant's additional testimony that he was "hanging out *in* the dorms" (emphasis added) that day suggests he may also have consumed alcohol inside the dormitory building, the reasonable inference that can be drawn from Appellant's testimony and the stipulation of fact is that at some point on the date in question, Appellant was drinking alcohol outside ("by") the dormitory building. *Carr*, 65 M.J. at 41 (in reviewing the providence of a guilty plea, courts consider the appellant's "colloquy with the military judge, as well [as] any inferences that may reasonably be drawn from it"). Thus, Appellant consumed alcohol outside his dwelling place while under age, in violation of Clark County, Nevada, law and in dereliction of his military duty to obey such local law.[21]

In summary, Appellant admitted he had a duty, knew he had that duty, and was derelict in that duty. There is an adequate factual basis to support Appellant's plea and nothing in the record raises a substantial question as to the providency of the plea.

### b. Counsel's Performance

The Supreme Court has established that to prevail on an ineffective assistance claim, a convicted defendant bears the burden of proving that: (1) defense counsel's performance was deficient; and (2) the defense was prejudiced by the

---

[20] *See* MERRIAM WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/by (last visited 29 Jun. 2022).

[21] We recognize that the stipulation of fact avers Appellant was derelict in his duty to "obey *Nevada law* by drinking alcohol while under the legal drinking age." (Emphasis added). However, we need not decide whether the law of Clark County, Nevada, a political subdivision of Nevada, constitutes "Nevada law." The specification of dereliction of duty does not identify a specific law Appellant was derelict in failing to obey, and during the *Care* inquiry, Appellant explicitly stated he understood he had a military duty to obey "local law."

deficient performance. *Strickland*, 466 U.S. at 698. The CAAF employs the same test. *Carter*, 79 M.J. at 480.

Appellant argues his trial defense counsel was ineffective when he "acquiesced to a pretrial agreement that required Appellant to improvidently plead guilty to an offense based upon an erroneous understanding of state law," and despite the preliminary hearing officer having identified the issue. Appellant asserts that his ineffective assistance of counsel claim is raised "in the alternative," but this assignment of error relies on the claimed improvidence of Appellant's plea, a claim we have rejected.

Appellant offers no additional basis for why trial defense counsel's advice to plead guilty was deficient and we can conjure none.[22] Under the circumstances of this case, where the Appellant's plea was provident and his guilty plea pursuant to a PTA was consistent with Appellant's stated objective to resolve the charges as soon as possible, we discern no other basis for finding counsel's performance deficient.

Because we find no error in trial defense counsel's performance regarding Appellant's guilty plea to this charge and specification, we need not evaluate prejudice.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

ANTHONY F. ROCK, Maj, USAF
Acting Clerk of the Court

---

[22] For instance, an appellant might argue they should have elected to not plead guilty for reasons other than improvidence. However, as noted in Section II.A.3.c., *supra*, there were strong reasons for Appellant's PTA and resulting guilty plea, including the favorable PTA terms in light of the maximum confinement possible for the charged misconduct, and his stated desire to leave pretrial confinement as soon as possible. And choosing to litigate this comparatively minor charge and specification without any certainty of an acquittal may not have been worth risking Appellant's favorable PTA.