UNITED STATES, Appellee

v.

Sergio SOTO Jr., Private First Class
U.S. Army, Appellant

No. 10-0397

Crim. App. No. 20090255

United States Court of Appeals for the Armed Forces

Argued December 14, 2010

Decided January 21, 2011

RYAN, J., delivered the opinion of the Court, in which
EFFRON, C.J., and BAKER, ERDMANN, and STUCKY, JJ., joined.

Counsel

For Appellant: Captain Brent A. Goodwin (argued); Colonel
Mark Tellitocci, Lieutenant Colonel Imogene M. Jamison,
Lieutenant Colonel Jonathan Potter, and Major Peter
Kageleiry (on brief); Lieutenant Colonel Matthew M. Miller
and Captain Shay Stanford.

For Appellee: Captain Christopher B. Witwer (argued);
Major Christopher B. Burgess and Major LaJohnne A. White
(on brief).


Military Judge: Robert R. Rigsby


**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

Judge RYAN delivered the opinion of the Court.

Pursuant to his pleas, Appellant was found guilty by a military judge sitting as a special court-martial of two specifications of absence without leave, and one specification each of the following:  making a false official statement, damaging property, and larceny, in violation of Articles 86, 107, 109, and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 907, 909, 921 (2006).  Appellant was sentenced to a reduction to the grade of E-1, confinement for two months, and a bad-conduct discharge.  Per the terms of the pretrial agreement, the convening authority approved only the punitive discharge. The United States Army Court of Criminal Appeals (ACCA) reviewed Appellant's case and summarily affirmed Appellant's conviction.  See United States v. Soto, No. 20090255, slip op. at 1 (A. Ct. Crim. App. Feb. 17, 2010) (per curiam).

Appellant filed a petition for grant of review on April 15, 2010, and on July 13, 2010, we granted Appellant's petition on the following issue:

> WHETHER THE PRETRIAL AGREEMENT CONTAINED A PROHIBITED AND UNENFORCEABLE PROVISION REQUIRING APPELLANT TO "OFFER TO REQUEST A BAD[-]CONDUCT DISCHARGE DURING THE SENTENCING PHASE" THEREBY VIOLATING RULE FOR COURTS-MARTIAL 705(c)(1)(B) AND PUBLIC POLICY.

United States v. Soto, No. 10-0397/AR

United States v. Soto, 69 M.J. 198, 198 (C.A.A.F. 2010) (order granting review) (alteration in original).

In this case, the provision in question was placed in the quantum portion of the pretrial agreement (PTA), notwithstanding the fact that it was not a quantum limitation on the sentence. The provision was neither disclosed to the military judge prior to his accepting Appellant's plea of guilty (although the military judge specifically asked whether there were any conditions in the quantum portion), nor was it discussed with Appellant before, during, or after the providence inquiry. We hold that under these facts, the plea inquiry was improvident.

## I.

Appellant and the convening authority entered into a pretrial agreement. The pretrial agreement had two components: an "Offer to Plead Guilty" and Appendix I, "Quantum." In the quantum portion of the pretrial agreement, Appellant agreed to: (1) plead guilty to the Charges and Specifications, as set forth in the Offer to Plead Guilty; (2) abide by the other terms and conditions set forth in the Offer to Plead Guilty; (3) request a bad-conduct discharge during the sentencing phase of trial; and (4) submit a post-trial Chapter 10 in the event the military judge did not adjudge a discharge.

3

The quantum portion of the pretrial agreement further specified that in return for Appellant's cooperation, the convening authority would: (1) approve no punishment other than a bad-conduct discharge; (2) disapprove any sentence to confinement; (3) disapprove any restriction; (4) disapprove any fine; (5) disapprove any hard labor without confinement; and (6) approve a post-trial Chapter 10, should a discharge not be adjudged.

At trial, the military judge conducted the inquiry into the terms of the Offer to Plead Guilty component of the PTA, in accordance with Rule for Courts-Martial (R.C.M.) 910(f)(3) and (4). However, because the provision requiring Appellant to request a bad-conduct discharge at trial appeared only in the quantum portion of the PTA, it was not disclosed to the military judge, and was not discussed with Appellant.

Before accepting Appellant's guilty plea, the military judge addressed the quantum portion of the agreement as follows:

> MJ: Counsel, are there any conditions or terms in the Quantum Portion other than a limitation on sentence?
>
> TC: No, Your Honor.
>
> DC: Your Honor, may I have a moment?
>
> MJ: Yes.

4

[The defense counsel conferred with the accused.]

DC: Your Honor, there is a condition other than a limitation on sentence.

MJ: What is the condition?

DC: Your Honor --

MJ: I do not want to know the quantum, but I have to know what the condition is.

DC: The condition is to --

MJ: Hold on a second, does this deal with the sentence limitation?

DC: No, Your Honor.

MJ: Do you need a recess?

. . . .

[The court was recessed and reconvened.]

MJ: . . . Private Soto, there is one condition in the quantum portion other than a limitation on sentence. Captain McDonald, is that your understanding?

DC: Yes, Your Honor.

MJ: Private Soto, is that your understanding?

ACC: Yes, Your Honor.

MJ: Captain Mackler, is that your understanding?

TC: Yes, Your Honor.

MJ: From what I understand . . . . It says that [the convening authority will] "Approve a Post[-]Trial Chapter 10 should a discharge not be adjudged."

(Text in second set of brackets added.)  The condition in

the quantum portion of the PTA requiring Appellant to

5

request a bad-conduct discharge was neither disclosed to the military judge nor discussed during the plea inquiry.

During sentencing, defense counsel requested a bad-conduct discharge. After defense counsel made the request for a punitive discharge during argument on sentencing, the military judge asked Appellant to confirm that he understood the nature of a punitive discharge, that he himself desired a punitive discharge, and that he consented to counsel's request. The only evidence presented at sentencing was Appellant's short unsworn statement which included an acknowledgment of wrongdoing and an apology. The military judge proceeded to sentence Appellant, inter alia, to a bad-conduct discharge, which the convening authority later approved pursuant to the pretrial agreement. Immediately after sentencing, the military judge reviewed the quantum portion with Appellant, discussing the convening authority's obligations under the PTA in some detail, but he failed to discuss the provision requiring Appellant to request a bad-conduct discharge.

## II.

A plea of guilty is more than an admission of guilt -- it is the waiver of bedrock constitutional rights and privileges. Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). Under controlling Supreme Court precedent it is,

therefore, constitutionally required under the Due Process Clause of the Fifth Amendment that a judge ensure that a guilty plea be entered into knowingly and voluntarily. Brady v. United States, 397 U.S. 742, 748 (1970); McCarthy v. United States, 394 U.S. 459, 466 (1969). It is axiomatic that "[t]he military justice system imposes even stricter standards on military judges with respect to guilty pleas than those imposed on federal civilian judges." United States v. Perron, 58 M.J. 78, 81 (C.A.A.F. 2003).

In order to ensure that pleas of guilty are not only knowing and voluntary but appear to be so, detailed procedural rules govern the military judge's duties with respect to the plea inquiry. See United States v. King, 3 M.J. 458, 459 (C.M.A. 1977) (noting that judicial scrutiny of plea agreements at the trial level enhances public confidence in the plea bargaining process). The military judge must ensure there is a basis in law and fact to support the plea to the offense charged. United States v. Inabinette, 66 M.J. 320, 321-22 (C.A.A.F. 2008); R.C.M. 910(e). Further, the military judge "shall inquire to ensure: (A) That the accused understands the agreement; and (B) That the parties agree to the terms of the agreement." R.C.M. 910(f)(4). This inquiry is part and

parcel of the providence of an accused's plea, and necessary to ensure that an accused is making a fully informed decision as to whether or not to plead guilty. King, 3 M.J. at 458-59.

Relatedly, it is the military judge's "responsibility to police the terms of pretrial agreements to insure compliance with statutory and decisional law as well as adherence to basic notions of fundamental fairness." United States v. Partin, 7 M.J. 409, 412 (C.M.A. 1979) (citation omitted). It is for this reason that the R.C.M. requires that the military judge "shall require" disclosure of the entire agreement excepting the quantum limitations before accepting a plea of guilty. R.C.M. 910(f)(3). Further, after the sentence is announced, the military judge both "shall inquire" into any parts of the PTA not previously examined, and ensure that an accused understands all material terms. R.C.M. 910(h)(3). As we have previously noted, an inquiry that falls short of these requirements and fails to ensure the accused understands the terms of the agreement is error. United States v. Felder, 59 M.J. 444, 445 (C.A.A.F. 2004); King, 3 M.J. at 459.

None of these procedural safeguards were afforded in this case with respect to the provision requiring Appellant

to request a bad-conduct discharge. We cannot say, for example, that the military judge considered whether the provision in question complied with statutory or decisional rules or was fundamentally fair.[1] Nor can we say, based on this record, that the military judge was aware that the defense counsel requested the bad-conduct discharge, and Appellant acceded to it, because it was a condition of the PTA. In fact, when the military judge specifically asked whether there were conditions in the quantum portion of the PTA, neither the Government nor the defense disclosed it. Examining the quantum portion of the agreement after the announcement of sentence, the military judge did not acknowledge the term requiring Appellant to request a punitive discharge during sentencing, let alone discuss it with Appellant.

"A fundamental principle underlying this Court's jurisprudence on pretrial agreements is that 'the agreement cannot transform the trial into an empty ritual.'" United

---

[1] This is particularly significant given that the provision in question is one of first impression, before this Court at least. Although we resolve this case based on the provision's effect on the providence inquiry under the facts presented here, and do not decide whether such a provision violates R.C.M. 705(c), military judges need to be ever vigilant in fulfilling their responsibility to scrutinize pretrial agreement provisions to ensure that they are consistent with statutory and decisional rules, and "basic notions of fundamental fairness." Partin, 7 M.J. at 412 (citation omitted).

United States v. Soto, No. 10-0397/AR

States v. Davis, 50 M.J. 426, 429 (C.A.A.F. 1999) (quoting
United States v. Allen, 8 C.M.A. 504, 507, 25 C.M.R. 8, 11
(1957)).  Judicial scrutiny of PTA provisions at the trial
level helps to ensure that this principle is fulfilled.  It
is true that not every procedural failure results in an
improvident plea.  See, e.g., Felder, 59 M.J. at 446.  But
where, as here, the provision in question is one that goes
directly to the sentence requested by an accused and
imposed by the military judge, the provision is tucked away
in the quantum portion of the PTA (although it is not a
sentence limitation), and the parties fail to disclose the
provision in response to a direct question by the military
judge, the integrity of the guilty plea process itself is
undermined.

While we are not suggesting that the parties
intentionally misled the military judge, under the facts
and circumstances of this case, it appears that the
military judge was unaware that Appellant's request for a
bad-conduct discharge was required by the PTA.  Thus, we
cannot say the request did not influence the sentence
imposed.  Under the particular facts of this case we hold
that there is a substantial basis in law to question the
providence of Appellant's plea.

III.

The decision of the United States Army Court of Criminal Appeals is reversed, and the findings and sentence are set aside.  The record of trial is returned to the Judge Advocate General, and a rehearing is authorized.