# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

### No. ACM S32679 (f rev)

————————————

### UNITED STATES
*Appellee*

**v.**

### Craig M. GEIER
Airman Basic (E-1), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 2 August 2022

————————————

*Military Judge:* Colin P. Eichenberger (arraignment and pretrial motions); Rebecca E. Schmidt.

*Sentence:* Sentence adjudged on 4 September 2020 by SpCM convened at Mountain Home Air Force Base, Idaho. Sentence entered by military judge on 9 November 2020 and reentered on 18 November 2020: Bad-conduct discharge and confinement for 105 days.

*For Appellant:* Captain David L. Bosner, USAF.

*For Appellee*: Lieutenant Colonel Matthew J. Neil, USAF; Major Brittany M. Speirs, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, KEY, and ANNEXSTAD, *Appellate Military Judges*.

Senior Judge KEY delivered the opinion of the court, in which Chief Judge JOHNSON and Judge ANNEXSTAD joined. Chief Judge JOHNSON filed a separate concurring opinion.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

KEY, Senior Judge:

A military judge sitting as a special court-martial convicted Appellant, in accordance with his pleas and pursuant to a plea agreement, of two specifications of wrongful use of controlled substances and two specifications of dereliction of duty in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a, and Article 92, UCMJ, 10 U.S.C. § 892, respectively.[1] The military judge sentenced Appellant to a bad-conduct discharge and confinement for 105 days. Appellant had been placed in pretrial confinement prior to his court-martial, and the military judge determined Appellant was entitled to 187 days of credit for that confinement.

Appellant's case was originally docketed with this court on 14 January 2021, however, we determined the record of trial was incomplete and returned it on 29 January 2021. *See United States v. Geier,* No. ACM S32679, 2021 CCA LEXIS 46 (A.F. Ct. Crim. App. 29 Jan. 2021). That error was corrected, and Appellant's case was re-docketed with this court on 16 March 2021.

On appeal, Appellant raises three assignments of error: (1) whether a plea agreement provision requiring the military judge to adjudge a bad-conduct discharge is legally permissible; (2) whether Appellant received adequate sentence relief for his pretrial confinement credit; and (3) whether his sentence is inappropriately severe. Finding no error prejudicial to the substantial rights of Appellant in the case as returned to us, we affirm the findings and sentence.

## I. BACKGROUND

Appellant's offenses involved him ingesting another Airman's prescription hydrocodone on one occasion in 2018, using cocaine at least 14 times between November 2019 and February 2020, and providing alcohol to an Airman and that Airman's wife—both of whom were 20 years old at the time. Some of Appellant's cocaine use was in the presence of other Airmen.

On 3 September 2020, Appellant entered into a plea agreement with the convening authority in which the convening authority agreed to refer Appellant's case to a special court-martial. The convening authority further agreed to dismiss a specification alleging Appellant's wrongful distribution of cocaine

---

[1] One of the specifications alleging wrongful use of a controlled substance relates to an offense which occurred in 2018. The version of Article 112a, UCMJ, 10 U.S.C. § 912a, in effect at the time is substantially identical to the version in effect at the time of Appellant's court-martial. Thus, all references to the UCMJ and the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

and a specification alleging his provision of alcohol to a third underage person. The plea agreement required the military judge to adjudge periods of confinement within specified ranges, all of which would be served consecutively, but in no event would the sentence exceed the number of days Appellant had already served in pretrial confinement.[2] The agreement also required the military judge to adjudge a bad-conduct discharge and noted, "If the provision above regarding a bad[-]conduct discharge is found to be invalid, that determination shall not affect the binding nature and enforceability of the other provisions contained herein."

In discussing the plea agreement with Appellant, the military judge initially questioned the enforceability of the provision requiring her to sentence Appellant to a bad-conduct discharge. After hearing the parties' views, she concluded the provision violated neither the Rules for Courts-Martial nor public policy in Appellant's case, because she still retained substantial latitude with respect to other types of punishment she could adjudge. Because of this latitude, the military judge reasoned the provision did not interfere with Appellant's right to full sentencing proceedings or render his court-martial "an empty ritual."

## II. DISCUSSION

### A. Agreement to Adjudge a Punitive Discharge

Appellant essentially argues the plea agreement's provision requiring the military judge to sentence him to a bad-conduct discharge deprived him of complete sentencing proceedings. We disagree.

We review questions of interpretation of plea agreements de novo, as such are questions of law. *See United States v. Lundy*, 63 M.J. 299, 301 (C.A.A.F. 2006) (applying de novo review to pretrial agreements). The standard is the same in our assessment of whether a plea agreement's terms violate the Rules for Courts-Martial. *See United States v. Hunter*, 65 M.J. 399, 401 (C.A.A.F. 2008) (applying de novo review in the case of pretrial agreements).

The Military Justice Act of 2016, enacted through the National Defense Authorization Act for Fiscal Year 2017, ushered in a number of changes to the military justice system.[3] Relevant here is the fact the law created Article 53a,

---

[2] If the military judge sentenced Appellant to the maximum number of days in each range, Appellant's ultimate sentence would have equaled the number of days of pretrial confinement credit he was due.

[3] Pub. L. No. 114-328, §§ 5001-5542 (23 Dec. 2016).

UCMJ, 10 U.S.C. § 853a, an entirely new article under the Code. This article, titled "Plea agreements," explains that an accused and convening authority may enter into an agreement over various matters, to include "limitations on the sentence that may be adjudged for one or more charges and specifications." Article 53a(a)(1)(B), UCMJ, 10 U.S.C. § 853a(a)(1)(B).[4] The article requires military judges to reject any plea agreement which "is contrary to, or is inconsistent with, a regulation prescribed by the President with respect to terms, conditions, or other aspects of plea agreements." Article 53a(a)(5), UCMJ, 10 U.S.C. § 853a(a)(5).

Pursuant to the version of Rule for Courts-Martial (R.C.M.) 705 which became effective on 1 January 2019, plea agreements may include promises by convening authorities to limit the sentence which may be adjudged in a given case. R.C.M. 705(b)(2)(E). Such limits may include a limitation on the maximum punishment which may be imposed; a limitation on the minimum punishment which may be imposed; or both. R.C.M. 705(d)(1).[5] A plea agreement, however, may not deprive an accused of certain rights, to include "the right to complete presentencing proceedings." R.C.M. 705(c)(1)(B).

Under the prior version of R.C.M. 705—which addressed "pretrial agreements," as opposed to plea agreements—any sentence limitation constrained the convening authority in taking action, not the sentencing authority's discretion in adjudging a sentence. *See* R.C.M. 705 (b)(2)(E), *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*). Like the current version of the rule, the preceding version prohibited agreements which deprived the accused of "complete sentencing proceedings." R.C.M. 705(c)(1)(B), 2016 *MCM*. In deciding whether to accept an accused's guilty plea under the old rules, the military judge would require the disclosure of the entire agreement—with the exception of any sentence limitation in cases in which the military judge was the sentencing authority—and ensure the accused understood the agreement. R.C.M. 910(f)(3)–(4), 2016 *MCM*. Under the current rules, the military judge still ensures the accused understands the agreement, but the entirety of the plea agreement is disclosed, to include any sentence limitations. R.C.M. 910(f)(3)–(4). The sentencing authority must then sentence the accused in accordance

---

[4] Prior to the creation of this article, the UCMJ did not contain any provisions related to such agreements. Rather, the *Manual for Courts-Martial*'s guidance on pretrial agreements was found solely in the Rules for Courts-Martial.

[5] R.C.M. 705(d)(2) addresses plea agreement limitations on confinement and fines, while R.C.M. 705(d)(3) explains that a plea agreement "may include a limitation as to other authorized punishments as set forth in R.C.M. 1003." R.C.M. 1003(b)(8), in turn, discusses punitive separations which may be adjudged by a court-martial.

with the terms of the agreement. R.C.M. 910(f)(5); R.C.M. 1005(e)(1); R.C.M. 1006(d)(6).

Even before the Rules for Courts-Martial explicitly referred to "complete sentencing proceedings," military appellate courts concluded that pretrial agreements which had the effect of transforming sentencing proceedings into "an empty ritual" were impermissible. *See, e.g.*, *United States v. Davis*, 50 M.J. 426, 429 (C.A.A.F. 1999) (quoting *United States v. Allen*, 25 C.M.R. 8, 11 (C.M.A. 1957)) (describing this premise as a "fundamental principle" in military jurisprudence). In arguing that his plea agreement did just that, Appellant points to *United States v. Soto*, which involved a pretrial agreement provision requiring trial defense counsel to argue in favor of a bad-conduct discharge—a provision which was not disclosed to the military judge until after the sentence was adjudged. 69 M.J. 304, 305 (C.A.A.F. 2011). The United States Court of Appeals for the Armed Forces (CAAF) found error because the parties failed to inform the military judge about the provision—even after he asked about the existence of any other provisions—which meant the military judge did not have the opportunity to determine whether or not the provision was fair prior to sentencing the accused. *Id.* at 307. Additionally, even when the military judge finally learned of the provision after sentencing the accused, the military judge "did not acknowledge the term . . . let alone discuss it" with the accused. *Id.* In a footnote, the CAAF explained it did not determine whether or not the provision violated R.C.M. 705(c), but cautioned military judges to "be ever vigilant in fulfilling their responsibility to scrutinize pretrial agreement provisions to ensure that they are consistent with statutory and decisional rules, and 'basic notions of fundamental fairness.'" *Id.* at 307 n.1 (quoting *United States v. Partin,* 7 M.J. 409, 412 (C.M.A. 1979)).[6]

Appellant argues that *Soto* stands for the proposition that a provision requiring defense counsel to argue for a bad-conduct discharge is invalid, but his reading is incorrect—the ruling in *Soto* was based on the lack of judicial scrutiny of the provision by the military judge, not the validity of the provision itself.[7] *Id.* at 307. At the time of the court-martial in *Soto*, the military judge was unaware of the bad-conduct discharge provision when he sentenced the accused. This deprived the military judge of the ability to either analyze the provision's fairness or discuss it with the accused prior to sentencing him. In Appellant's case, however, the military judge was not only aware of the bad-conduct discharge provision prior to adjudging a sentence, but she discussed it

---

[6] *United States v. Partin* dealt not with an impermissible pretrial agreement term, but rather the military judge's erroneous explanation of the agreement's terms. 7 M.J. 409, 412 (C.M.A. 1979).

[7] We offer no opinion on the validity of the provision at issue in *Soto*.

with counsel for both parties as well as with Appellant himself. As a result, *Soto* does not advance Appellant's position.

Appellant also points to the United States Coast Guard Court of Criminal Appeals case of *United States v. Libecap* in which that court held a provision similar to the one in *Soto* was "against public policy" and therefore impermissible. 57 M.J. 611, 616 (C.G. Ct. Crim. App. 2002). That decision was premised on the notion that requiring an accused to argue for a punitive discharge would "always have the potential to seriously undercut any other efforts at trial to avoid a punitive discharge." *Id.* at 615. The court concluded it would "create the impression, if not the reality, of a proceeding that was little more than an empty ritual, *at least with respect to the question of whether a punitive discharge should be imposed.*" *Id.* at 606 (emphasis added). *Libecap* does little to advance Appellant's argument because the ruling is based on the fact that the military judge was unaware of the pretrial agreement's sentence limitations and was still deciding whether or not to adjudge a punitive discharge. We read *Libecap* as saying the problem was the accused was required to give up his bargaining position, thereby undermining the sentencing process in place at the time, in which the accused would typically try to obtain a sentence lighter than the limitations in the pretrial agreement. Under the current rules, however, the military judge is aware of—and bound by—the sentence limits in the plea agreement, so the *Libecap* concerns are absent. In fact, one could rationally conclude the rules regarding plea agreements were designed for the purpose of limiting, if not eliminating, defense efforts to "beat the cap" in sentencing proceedings.

Appellant argues *Libecap* stands for the proposition that Appellant was denied constitutional due process by virtue of the plea agreement provision—which he agreed to—requiring the military judge to adjudge a bad-conduct discharge. *Libecap*, however, was not decided on constitutional grounds and makes no reference to due process at all. Instead, the opinion was grounded in notions of public policy.[8] Appellant identifies no notion of due process that would prohibit a military accused from negotiating for a specific sentence under the UCMJ provisions applicable to his court-martial, and we are aware of none. While the prior system bound convening authorities to take certain actions regarding adjudged sentences, the current system explicitly constrains military judges' and court members' sentencing discretion. Under the former

---

[8] We recognize *Soto* and *Libecap* dealt with provisions requiring defense counsel to argue for punitive discharges while Appellant's case involves a provision binding the military judge's discretion, but both types of provisions are designed to reach the same result: a sentence including a punitive discharge.

system, sentencing discretion was largely unfettered, cabined only by the maximum sentences identified in the *Manual for Courts-Martial*. That is no longer the case, and the Rules for Courts-Martial's references to "complete sentencing proceedings" must not be read in isolation or inseparably tied to now-obsolete practices, but in conjunction with the evolution of those sentencing proceedings.

Another argument advanced by Appellant is that a plea agreement term requiring a bad-conduct discharge violates public policy. He correctly notes that laws passed by Congress are a good measure of public policy, and he points to Article 56(c)(1), UCMJ, which states that "[i]n general . . . a court-martial shall impose punishment that is sufficient, but not greater than necessary, to promote justice and to maintain good order and discipline in the armed forces." 10 U.S.C. § 856(c)(1). Therefore, Appellant argues, courts-martial should be afforded maximum latitude in sentencing decisions. Somewhat undermining this theory is that this very same article requires the mandatory imposition of a dishonorable discharge for specific offenses. *See* Article 56(b), UCMJ, 10 U.S.C. § 856(b). Moreover, Article 53a, UCMJ—also an indicator of public policy—not only permits plea agreements which impose limitations on the sentence that may be adjudged, but requires sentencing authorities to adhere to those limits. Taking these provisions together, our assessment is that the policy established by Congress is that sentencing authorities should adjudge appropriate and non-excessive sentences, but that certain offenses require certain punishments and—in any event—those facing courts-martial are permitted to enter plea agreements which constrain military judges' or court members' sentencing discretion.

Appellant does not attempt to identify any legal basis for maximal discretion in sentencing other than by pointing to the "complete sentencing proceedings" reference in the Rules for Courts-Martial, 2016 *MCM*. While there may be sound arguments for granting military sentencing authorities broad discretion in those proceedings, we cannot say they are rooted in constitutional due process considerations. As the United States Supreme Court has explained, "Congress has the power to define criminal punishments without giving the courts any sentencing discretion." *Chapman v. United States*, 500 U.S. 453, 467 (1991) (citing *Ex parte United States*, 242 U.S. 27, 37 (1916)). Individualized sentencing is not derived from the United States Constitution, but from "public policy enacted into statutes." *Id.* (quoting *Lockett v. Ohio*, 438 U.S. 586, 604–05 (1978) (plurality opinion)). In short, Congress may give and Congress may take away. In terms of sentencing proceedings, Congress has authorized plea agreements which involve "limitations on the sentence that may be adjudged." Given the fact Congress elsewhere in the UCMJ addresses minimum and maximum sentences, the absence of such qualifications with respect to the "limitations" in Article 53a, UCMJ, is strong evidence such limitations may

apply to both the upper and lower ends of the punishment spectrum. We see no indication Congress intended a contrary outcome. In promulgating the current version of R.C.M. 705, it seems clear the President read Article 53a, UCMJ, in the same way we do. We conclude the plea agreement provision requiring a military judge or court members to sentence Appellant to a bad-conduct discharge violates neither the Constitution nor the UCMJ, nor does it run afoul of public policy under the arguments raised on appeal.

## B. Credit for Pretrial Confinement

Appellant served 187 days in pretrial confinement, and the military judge sentenced him to 105 days of confinement and a bad-conduct discharge. She announced, "The accused will be credited with 187 days of pretrial confinement against the accused's term of confinement." For the first time on appeal, Appellant argues he is entitled to additional sentence relief based upon the fact he had more pretrial confinement credit than he had adjudged days of confinement. Seemingly conceding that nothing in the UCMJ or the Rules for Courts-Martial calls for applying "excess" pretrial confinement credit to other elements of an adjudged sentence, Appellant attempts to compare his situation to cases involving illegal pretrial punishment credit, which may be applied against non-confinement punishments. *See, e.g.*, R.C.M. 305(k). Specifically, he argues his 82 days of "excess" credit should be applied against his punitive discharge. We disagree.

We review the application of pretrial confinement credit de novo. *United States v. Spaustat*, 57 M.J. 256, 260 (C.A.A.F. 2002). Military members who serve pretrial confinement are entitled to day-for-day credit against their adjudged sentence. *United States v. Allen*, 17 M.J. 126, 128 (C.M.A. 1984).

Although Appellant entered into a plea agreement which both required the military judge to adjudge a bad-conduct discharge and virtually guaranteed a "surplus" of pretrial confinement credit (unless the military judge sentenced him to the absolute maximum amount of confinement she was authorized), we will set aside the question of whether he waived this issue. In doing so, we note the same argument Appellant raises now was squarely rejected by the CAAF in *United States v. Smith*. 56 M.J. 290 (C.A.A.F. 2002). In that case, the appellant spent 94 days in pretrial confinement, but was sentenced to a bad-conduct discharge, forfeitures, reduction in grade, and three months of hard labor without confinement. *Id*. at 291. The convening authority disapproved the hard labor without confinement after the staff judge advocate encouraged him to do

so under the theory such a punishment would have simply amounted to a burden on the appellant's unit.[9] *Id.* As Appellant does now, the appellant in *Smith* argued his pretrial confinement credit should be analogized to illegal pretrial punishment credit. *Id.* at 292. The CAAF rejected this argument and concluded the appellant was only entitled to credit against adjudged confinement insofar as no law, rule, or regulation required the application of credit against non-confinement elements of a sentence. *Id.* at 293. Appellant has similarly not identified any authority directing the result he seeks. We acknowledge Appellant's case is slightly different from *Smith* because Appellant was sentenced to a period of confinement. But we cannot find any logic in the proposition that a person who is sentenced to some confinement should receive a more favorable result than one who is not sentenced to any confinement at all.

We briefly note the fundamental difference between illegal pretrial punishment and pretrial confinement in the UCMJ context. The former involves the illegal treatment of a servicemember—that is, a legal error. Credit is granted in the case of such punishment in order to remedy the error and thereby ensure the sentence "retains its integrity" in spite of the illegality. *United States v. Larner*, 1 M.J. 371, 373 (C.M.A. 1976). Pretrial confinement, however, involves the entirely legal proposition of confining a servicemember pending court-martial in order to ensure the servicemember's presence at trial or to prevent the servicemember from engaging in serious criminal misconduct. Thus, when pretrial confinement is properly imposed, there is no legal error to remedy, nor does its imposition raise any question about the ultimate sentence. Credit in this circumstance operates to ensure the servicemember's sentence is not inappropriately extended. *See, e.g.*, *Allen*, 17 M.J. at 129 (Everett, C.J., concurring) (highlighting the risk of exceeding the maximum amount of confinement authorized by the *Manual for Courts-Martial*). This is not to say Congress or the President is prohibited from directing pretrial confinement credit being applied against non-confinement elements of a sentence, but they have not, and we will not institute such a practice on our own accord.

## C. Sentence Appropriateness

Appellant contends his sentence is inappropriately severe. He primarily argues this is so based upon his substantial health concerns which came to light during his military service. According to his written unsworn statement he presented at his court-martial, Appellant suffered from significant pain and

---

[9] Because the Rules for Courts-Martial at the time employed a ratio of one-and-a-half days of hard labor to one day of confinement, the appellant in *Smith* would have still had "excess" pretrial confinement credit had his credit been applied to the hard labor.

other symptoms due to his medical condition, and he turned to alcohol and cocaine as a method of self-medication.

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (citation omitted). Our authority to determine sentence appropriateness "reflects the unique history and attributes of the military justice system, [and] includes but is not limited to considerations of uniformity and evenhandedness of sentencing decisions." *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (citations omitted). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(d), UCMJ, 10 U.S.C. § 866(d). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam) (citations omitted). Although we have great discretion to determine whether a sentence is appropriate, we have no power to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

We do not diminish Appellant's significant health concerns, but we also do not find his sentence to be inappropriately severe given his extensive illegal drug use with and in the presence of other Airmen. Appellant stipulated that his hydrocodone use came about when another Airman complained of the unpleasant side effects he suffered from his prescribed medication. Appellant took the opportunity to research—on the spot—whether one could get high from the pills. He then took a pill, crushed it up, and snorted it in front of several others. Later, Appellant began using cocaine once or twice a weekend for about three months, leading up to his placement in pretrial confinement. The military judge sentenced Appellant to be confined for 25 days for the hydrocodone use and 85 days for the cocaine use. During the period in which he was using cocaine, Appellant provided alcohol to an underage Airman and that Airman's underage wife in anticipation of the wife's 21st birthday; Appellant received no confinement time for this conduct. Considering Appellant, his record of service, his personal circumstances, and everything else in the record of trial, we conclude Appellant's sentence to 105 days of confinement and a bad-conduct discharge is appropriate.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

JOHNSON, Chief Judge (concurring):

The opinion of the court, which I join, explains why the plea agreement provision requiring the military judge to adjudge a bad-conduct discharge did not violate Appellant's due process rights and was not contrary to public policy. The opinion of the court does not need to, and does not, decide whether a more restrictive plea agreement term—e.g., one that prescribed the entire precise sentence the military judge was bound to impose—might be unenforceable under R.C.M. 705(c)(1)(B), which prohibits plea agreement terms which deprive the accused of "the right to complete presentencing proceedings." However, the reasoning of the opinion might be read to *imply* that such a restrictive term would be consistent with complete presentencing proceedings. I do not agree with that proposition, and I write separately to clarify my understanding of the relationship between punishment limitations and the requirement for "complete" proceedings under R.C.M. 705.

As the opinion of the court explains, the plea agreement process created by the Military Justice Act of 2016 differs from the prior practice of creating pretrial agreements between the convening authority and the accused. In particular, there is a fundamental difference in how the two practices operate to put limits on the sentence that an accused may receive from a court-martial. In a pretrial agreement that included a limitation or "cap" on one or more forms of punishment, the convening authority agreed to approve a sentence no greater than that authorized by the cap. The sentencing authority was not made aware of the limitations before the sentence was announced. Therefore, the sentencing authority was free to adjudge any lawful sentence that they believed to be appropriate for the offenses of which the accused was convicted.

Plea agreements are significantly different from pretrial agreements in that they can directly constrain the punishment the sentencing authority may impose. Thus, in a plea agreement, the accused may negotiate away his or her right to have an independent sentencing authority fully exercise independent discretion to decide what, if any, punishment is appropriate for the offenses, unconstrained by any minimum punishment required by the plea agreement. Put another way, plea agreements enable the removal of the safeguard of an independent sentencing authority's judgment as to what punishments the accused's sentence should and should not include. Of course, the requirement remains that the accused enters the plea agreement voluntarily. R.C.M. 705(c)(1)(A). However, in a system where an undeniable imbalance of power exists between the Government and the accused servicemember, the substitution of a prescribed negotiated result for the independent judgment of a neutral and detached sentencing authority is potentially concerning.

Yet R.C.M. 705(c)(1)(B) still prohibits plea agreement terms that deprive the accused of, *inter alia*, "the right to complete presentencing proceedings."

11

Certainly, the primary purpose of presentencing proceedings—including the introduction of evidence, the testimony of witnesses, the receipt of statements from the victim and the accused, all provided or addressed to the sentencing authority—is to enable the sentencing authority to make an informed decision on the appropriate sentence. If a specific sentence were predetermined by a plea agreement before the presentencing hearing even begins, it is difficult to avoid the conclusion that the presentencing proceeding becomes a substantially hollow exercise.

I do not purport to decide or know at what point maximum and minimum sentence limitations so constrain the military judge's discretion that they might deprive an accused of complete presentencing proceedings. But I agree the requirement to adjudge a bad-conduct discharge in Appellant's case did not cross such a line, because the military judge retained significant discretion over the other potential elements of the sentence,[*] and I agree the findings and sentence should be affirmed.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[*] The plea agreement required the military judge to adjudge a sentence that included a bad-conduct discharge, between 0 and 77 days of confinement for wrongful use of hydrocodone, between 0 and 90 days for divers wrongful use of cocaine, and between 0 and 10 days for each of the two derelictions of duty, with the adjudged terms of confinement to be served consecutively. The plea agreement did not constrain the military judge's discretion with respect to any other form of punishment.