# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 40745**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Michael P. DOOLIN, Jr.**
Airman (E-2), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 17 April 2026

———————————

*Military Judge*: Christopher D. James.

*Sentence*: Sentence adjudged on 23 April 2024 by GCM convened at Osan Air Base, Republic of Korea. Sentence entered by military judge on 29 May 2024: Bad-conduct discharge, 17 months' confinement, reduction to E-1, and a reprimand.

*For Appellant*: Major Megan R. Crouch, USAF; Major Thomas R. Govan, Jr., USAF.

*For Appellee*: Major Vanessa Bairos, USAF; Major Kate E. Lee, USAF; Captain Donnell D. Wright, USAF; Mary Ellen Payne, Esquire.

Before DOUGLAS, MCCALL, and KUBLER, *Appellate Military Judges*.

Senior Judge DOUGLAS delivered the opinion of the court, in which Judge MCCALL and Judge KUBLER joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

DOUGLAS, Senior Judge:

A general court-martial composed of a trial judge found Appellant guilty, in accordance with his pleas and pursuant to a plea agreement, of one specification of attempted sexual abuse of a child by indecent language, on divers occasions, in violation of Article 80, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 880.[1] The trial judge sentenced Appellant to a bad-conduct discharge, 17 months' confinement, reduction to the grade of E-1, and a reprimand. The convening authority took no action on the findings or the sentence and provided the language for the reprimand. The convening authority deferred all automatic forfeitures until the trial judge signed the entry of judgment and then waived them for a period of six months, for the benefit of Appellant's dependent.

Appellant raises two issues on appeal: whether (1) the trial judge abused his discretion by accepting Appellant's guilty plea where Appellant's statements during the *Care*[2] inquiry did not establish a sufficient factual basis for the plea; and (2) Appellant is entitled to sentencing relief because of the 244-day delay between sentencing and docketing with the court.

We find no error materially prejudicial to Appellant's substantial rights, and we affirm the findings and the sentence.

## I. BACKGROUND

Appellant, 26 years old, began communicating with "Jessie" on a social dating application. "Jessie's" profile indicated she was in college. But soon after beginning their communications, Appellant asked "Jessie" her age. "Jessie" explained she was "almost 15!" Unbeknownst to Appellant, "Jessie" was a special agent of the United States Army Criminal Investigation Division (USCID). This agent was posing as a 14-year-old girl as part of an undercover law enforcement investigation. Despite being informed that "Jessie" was only 14 years old, Appellant continued his communications with her for one month, on multiple occasions, through multiple electronic means. Some of these communications resulted in Appellant's charged offense, attempted sexual abuse of a child by indecent language. The Specification of the Charge is written as follows:

> In that [Appellant], did, within the Republic of Korea, between on or about 12 April 2023 and on or about 13 May 2023, on divers

---

[1] Unless otherwise noted, all references to the UCMJ and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.) (*MCM*).

[2] *United States v. Care*, 40 C.M.R. 247 (C.M.A. 1969).

occasions, attempt to commit a lewd act upon a child who had not attained the age of 16 years, by intentionally communicating to said child indecent language, to wit: "I gotta see the body I'm gonna be working with so I know exactly what I'm gonna want to do to you" and other sexually driven statements, or words to that effect, with an intent to arouse his sexual desire.

Prior to trial, Appellant entered into a plea agreement with the convening authority. Pursuant to the plea agreement, Appellant agreed to enter guilty pleas at a general court-martial, elect trial by a military judge alone, and enter into a reasonable stipulation of fact sufficient to establish each of the elements of the offense. The stipulation of fact consists of a total of 88 pages and 1 disc. The stipulation of fact recites numerous communications that are supported by nine attachments.

During Appellant's *Care* inquiry, the trial judge discussed the elements and definitions of the offense with Appellant. Specific to the "lewd act" as charged, the trial judge provided the following definition, correctly:

Intentionally communicating indecent language to a child by any means, including via any communication technology, with an intent to abuse, humiliate, or degrade any person, or to arouse or gratify the sexual desire of any person.

Specific to the term "indecent language," the trial judge provided the following definition, which is the basis of Appellant's first issue on appeal.

That which is grossly offensive to modesty, decency, or [p]roprietary- propriety, or shocks the moral sense, because of its vulgar, filthy, or disgusting nature, or its tendency to incite lustful thought. Language is indecent if it tends reasonably to corrupt morals or incite libidinous thoughts. The language must violate community standards.[3]

Appellant specifically admitted in his stipulation of fact and in his *Care* inquiry that he intentionally communicated the charged words, "I gotta see the body I'm gonna be working with so I know exactly what I'm gonna want to do to you." In the stipulation of fact, Appellant further admits that this communication, as well as numerous other intentional communications, were an attempt to sexually abuse a child by indecent language, without articulating what was indecent about his language.

---

[3] This language mirrors the definition found in the general article, Indecent language, Article 134, UCMJ, 10 U.S.C. § 934. *See MCM*, pt. IV, ¶ 105.c.

Turning to the charged, but unspecified indecent language, "and other sexually driven statements, or words to that effect," the trial judge questioned Appellant about four specific statements contained within the stipulation of fact. Appellant admitted each statement was an intentional communication he made to "Jessie":

- "[W]here do you want me to touch you…;"

- "[B]ut maybe while we're in bed we could explore each other's bodies;"

- "[Y]ou could always find some bathing suits? Or some cute underwear," and "we said we were going to show off our bodies before you lost your phone;" and

- "What kind of undies does your mom buy you? I actually like plain underwear the best [ ] thongs and stuff like that don't look good to me…[I don't know] why [ ] and one piece swimsuits are cute."

(Ellipses in original). Both Appellant and trial defense counsel confirmed they agreed the above statements were "sexually driven" and "indecent" as the trial judge had previously defined. The trial judge inquired further into Appellant's understanding of "indecent."

> [Trial Judge]: All right. How so?
>
> [Appellant]: Your Honor, it was sexual by nature. It was either sexual or just generally indecent language.
>
> . . . .
>
> [Appellant]: Your Honor, the language was grossly offensive because of its tendency to [incite] lustful thought.

The trial judge informed counsel that he had found Appellant guilty of the charged indecent language, "I gotta see the body I'm gonna be working with so I know exactly what I'm gonna want to do to you," as well as the above four statements, charged as "other sexually driven statements." Finally, Appellant confirmed all five statements were made with the intent to arouse or gratify his sexual desire.

## II. DISCUSSION

### A. Providency of Plea

#### 1. Law

We review a trial judge's decision to accept a guilty plea for an abuse of discretion. *United States v. Saul,* 86 M.J. 30, 33 (C.A.A.F. 2025) (citing *United*

*States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008)). "The military judge must ensure there is a basis in law and fact to support the plea to the offense charged." *United States v. Soto*, 69 M.J. 304, 307 (C.A.A.F. 2011) (citing *Inabinette*, 66 M.J. at 321–22) (additional citation omitted).

In order to convict Appellant of attempted sexual abuse of a child by indecent language as charged in this case, the Government was required to prove that on divers occasions, between on or about 12 April 2023 and on or about 13 May 2023, within the Republic of Korea: (1) that Appellant did certain overt acts by intentionally communicating to "Jessie" indecent language, to wit: "I gotta see the body I'm gonna be working with so I know exactly what I'm gonna want to do to you" and other sexually driven statements, or words to that effect; (2) that the acts were done with the specific intent to commit the offense of sexual abuse of a child; (3) that the acts amounted to more than mere preparation; and (4) that such acts apparently tended to bring about the commission of the offense. *See Manual for Courts-Martial*, *United States* (2019 ed.) (*MCM*), pt. IV, ¶ 4.b.(1)–(4).

Sexual abuse of a child in violation of Article 120b, UCMJ, required the Government to prove that Appellant committed a lewd act upon a child. *MCM*, pt. IV, ¶ 62.b.(3). "Lewd act" includes "intentionally communicating indecent language to a child by any means, including via any communication technology, with an intent . . . to arouse or gratify the sexual desire of any person." *MCM*, pt. IV, ¶ 62.a.(h)(5)(C). "The term 'child' means any person who has not attained the age of 16 years." *MCM*, pt. IV, ¶ 62.a.(h)(4).

Indecent language for purposes of Article 120b(c), UCMJ, is not defined. *See MCM*, pt. IV, ¶ 62.a.(h) (the absence of such definition). Article 120b, UCMJ, "does not criminalize 'indecent language' qua indecent language: Instead, Article 120b(c), UCMJ, proscribes 'lewd act[s]' upon children, and 'lewd act[s]' is defined to include indecent language . . . 'to gratify the sexual desire of any person.'" *United States v. Avery*, 79 M.J. 363, 369 (C.A.A.F. 2020) (first and second alterations in original). Thus, it "criminalizes neither all indecent language, nor vulgar language as a whole, but only indecent language that constitutes a 'lewd act'—that is, a 'sexually unchaste or licentious' act." *Id.* (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 1301 (1986) (entry for "lewd")).

"Unchaste" means "not chaste" or "lacking in chastity." *Unchaste*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/unchaste (last visited 2 Apr. 2026). "Chaste" means "pure in thought and act." *Id.* at /chaste. "Licentious" means "disregarding sexual restraints." *Id.* at /licentious. Synonyms include "lustful" and "libidinous." *Id.* at /lustful, libidinous.

The trial judge may consider both the stipulation of fact and the inquiry with the appellant when determining if the guilty plea is provident. *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014).

**2. Analysis**

Appellant contends the trial judge abused his discretion by accepting the guilty plea in two ways. First, by failing to instruct Appellant properly on the definition of "indecent language," Appellant claims the trial judge failed to obtain the requisite factual basis to a provident plea. Second, Appellant claims his communicated language to "Jessie" did not constitute indecent language. Appellant primarily relies upon *Avery*, cited *supra*, for his arguments. The Government agrees the trial judge applied the definition of "indecent language" from Article 134, UCMJ, 10 U.S.C. § 934, *Indecent language*, and offers that the definition from Article 134, UCMJ, is applied correctly here. *See MCM*, pt. IV, ¶ 105.c.

The trial judge provided the Appellant with the following definition of indecent language.

> *[T]hat which* is grossly offensive to modesty, decency, or [p]roprietary – propriety, or shocks the moral sense, because of its vulgar, filthy, or disgusting nature, or its *tendency to incite lustful* thought. Language is indecent if it tends reasonably to corrupt morals *or* incite *libidinous thoughts*. The language must violate community standards.

(Emphasis added). This definition mirrors that found in the general article, Article 134, UCMJ, *Indecent language*, *MCM*, pt. IV, ¶ 105.c.

We are not convinced "indecent language" requires a definition in Article 120b, UCMJ, cases. In fact, we do not believe *Avery* asserts a definition is required. Nonetheless, we heed our superior court's delineation of indecent language as found in the general article, Article 134, UCMJ, as opposed to that in Article 120b, UCMJ. We are convinced "indecent language" as defined in Article 134, UCMJ, contains within it both the definition applicable to Appellant's Article 120b, UCMJ, offense, as well as for indecent language cases appropriately charged under Article 134, UCMJ.

In its holding in *Avery*, that Article 120b, UCMJ, did not preempt the charged Article 134, UCMJ, offense of indecent language, our superior court asserted that "[t]he Article 134, UCMJ, offense of indecent language is more than a residuum of Article 120b(c), UCMJ," and that "Congress has not expressly or indirectly indicated that it intended Article 120b(c), UCMJ, to cover the entirety of offenses involving indecent language communicated to children." 79 M.J. at 370. The indecent language in *Avery* "was simply not a sexual

or lewd act as contemplated in Article 120b(c), (h)(5)(C)," and was "not calculated to 'incite lustful thought,' but was a joke—albeit a 'vulgar, filthy, or disgusting' one." *Id.* at 369–70. In that case, Avery was properly charged with violating Article 134, UCMJ, *Indecent language.*

However, in the case before us, Appellant's indecent language was of a sexual or lewd act, and to the extent a definition of indecent language is required for our review of Appellant's case, we follow *Avery*. Accordingly, "indecent language" means that which has a tendency to incite lustful or libidinous thoughts. As such, Appellant was properly charged and convicted of violating Article 120b(c), UCMJ. *See id.*

Therefore, the definition, as applied in Appellant's trial, was unnecessarily broad. Nonetheless, we hold the correct definition was contained within the definition applied. The unnecessary portions of the definition provided, which thereby caused unnecessary questions by the trial judge, and unnecessary answers by the Appellant, are extraneous. We do not consider them for purposes of our review of Appellant's convictions. Instead, we consider the evidence in the stipulation of fact and in the *Care* inquiry, to determine whether the trial judge abused his discretion when accepting Appellant's plea. We consider Appellant's responses to the trial judge's questions about Appellant's understanding of why his communication was in fact indecent, as charged. Appellant explained his language was "sexual by nature" and offensive because of its "tendency to insight lustful thought." While repeating the correct definition of indecent language, Appellant also explained that his communications were "sexual by nature." Combining Appellant's answers to the trial judge's questions, we find Appellant well understood the criminality of his communications. Even if the trial judge erred by asking more questions than required, we find his error is without material prejudice to the substantial rights of Appellant.

As to Appellant's second concern that his intentionally communicated language to "Jessie" did not constitute indecent communications, we disagree. The trial judge determined Appellant communicated five statements that were indecent. We review those same five statements. Appellant, an adult male, 26 years of age, communicated to a person he believed to be a 14-year-old girl, that he wanted to see certain body parts of hers that he proclaimed an intention to touch and explore with his hands. The communications were intended to arouse his sexual desires, as he explained. The trial judge did not abuse his discretion by accepting Appellant's guilty pleas. *Saul,* 86 M.J. at 33.

## B. Docketing Delay

### 1. Law

"[C]onvicted servicemembers have a due process right to timely review and appeal of courts-martial convictions." *United States v. Moreno*, 63 M.J. 129,

135 (C.A.A.F. 2006) (citations omitted). In *Moreno*, the United States Court of Appeals for the Armed Forces (CAAF) established a presumption of facially unreasonable delay "where the action of the convening authority is not taken within 120 days of the completion of trial," "where the record of trial is not docketed by the [CCA] within thirty days of the convening authority's action," or "where appellate review is not completed and a decision is not rendered within eighteen months of docketing the case before the [CCA]." 63 M.J. at 142. In *United States v. Livak*, this court adapted the *Moreno* standard for cases referred to trial on or after 1 January 2019 and established an aggregated 150-day standard for facially unreasonable delay from sentencing to docketing with the CCA. 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020).

Where there is a facially unreasonable delay, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice [to the appellant]." *Moreno,* 63 M.J. at 135 (citations omitted). The CAAF identified three types of cognizable prejudice for purposes of the right to timely post-trial review: (1) oppressive incarceration; (2) "particularized" anxiety and concern "that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision;" and (3) impairment of the appellant's grounds for appeal or ability to present a defense at a rehearing. *Id.* at 138–40 (citations omitted). Where there is no qualifying prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

We review de novo an appellant's entitlement to relief for post-trial delay. *Livak*, 80 M.J. at 633 (citing *Moreno*, 63 M.J. at 135).

### 2. Analysis

The record of trial was docketed with this court 244 days after sentencing, exceeding the 150-day *Livak* standard for facially unreasonable delay. Accordingly, we have considered the *Barker* factors, and despite the Government's lack of explanation of a docketing delay of 110 days, we find no violation of Appellant's due process rights.

On 27 February 2026, the court granted a Government's motion to attach a declaration by Captain (Capt) JM, Chief of Litigation at Osan Air Base. In tandem with the court reporter chronology, we consider Capt JM's declaration.[4] The trial concluded on 23 April 2024. The record of trial was certified on 1 July 2024. The transcript was certified on 15 July 2024, 83 days after trial.

---

[4] *United States v. Jessie*, 79 M.J. 437, 444 (C.A.A.F. 2020).

On 29 August 2024, the assembled record of trial (ROT) was sent for review to the supervising legal office, 7 AF/JA, 128 days after trial. Between 2 and 16 October 2024, the physical ROT was delivered to the supervising legal office. The supervising legal office eventually forwarded the record, and on 17 December 2024, the Appellate Records Branch received it. After directing edits, the Appellate Records Branch forwarded the record to the court, and the court docketed Appellant's case on 23 December 2024, 244 days after trial. Neither the court reporter chronology nor the declaration by Capt JM explains the delay to forwarding the physical ROT from the supervising legal office, from 29 August 2024 through 17 December 2024, which accounts for 110 days of the 244-day delay to docketing. We do not presume *no work* was being done to the record; however, a lack of explanation is not reasonable. The first two *Barker* factors weigh in favor of Appellant.

Appellant did not demand speedy review and did not offer any cognizable prejudice to his case from the delay in docketing with this court. The last two *Barker* factors weigh in favor of the Government.

Absent prejudice, we find the post-trial delay involved in Appellant's case has not been so egregious as to adversely affect the perception of the military justice system. *See Toohey*, 63 M.J. at 362. Furthermore, recognizing our authority under Article 66(d)(2), UCMJ, we have also considered whether relief for excessive post-trial delay is appropriate in this case even in the absence of a due process violation. *See Valentin-Andino*, 85 M.J. at 366 n.4. We conclude such relief is not warranted.

### III. CONCLUSION

The findings, as entered, are correct in law. Article 66(d), UCMJ (*Manual for Courts-Martial, United States* (2024 ed.)). In addition, the sentence, as entered, is correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court